2001 ME 12

**William I. JOHNSON**

v.

**Joseph G. CARLETON Jr.**

Supreme Judicial Court of Maine.

Argued Nov. 7, 2000.
Decided Jan. 19, 2001.

Nicholas H. Walsh, (orally), Portland, for plaintiff.

Theodore H. Kirchner, (orally), Norman, Hanson & DeTroy, LLC, Portland, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] William Johnson appeals from a summary judgment entered in the Superior Court (York County, *Fritzsche, J.*) in favor of Joseph Carleton in a professional legal malpractice action. Johnson contends that the trial court exceeded its discretion in denying his motion to enlarge time to designate experts, and that there are disputed issues of material fact that preclude the entry of a summary judgment in favor of Carleton. Concluding that the

court acted within its discretion in denying an enlargement of time, and that summary judgment was properly granted, we affirm the judgment.

[¶ 2] The facts viewed in the light most favorable to Johnson, against whom summary judgment was granted, are as follows. On November 26, 1996, eighty-four-year-old John Treamer agreed to sell, and Johnson to purchase, Treamer's home in Kennebunk and some items of personal property for $75,300. Johnson and Treamer signed a handwritten agreement drafted by Johnson, which purported to reserve a life tenancy in the home to Treamer. Johnson, who is an antique dealer, gave Treamer a one hundred dollar deposit.

[¶ 3] Johnson contacted Susan Vining, a paralegal employed by practicing attorney Joseph Carleton, seeking a contract to bind Treamer to sell his home. Johnson and Treamer went to Carleton's office on November 27, but at no time met with Carleton himself. Johnson and Treamer executed an agreement that Vining pre-

pared from a form agreement, and Vining served as a witness.[1] The contract set a closing date of June 1, 1997.

[¶ 4] In December of 1996, Treamer became ill and was hospitalized. The Cumberland County Probate Court appointed a guardian and conservator for Treamer. The guardian and conservator voided Treamer's contract with Johnson pursuant to paragraph seventeen of the contract[2] after a medical evaluation indicated that Treamer had suffered from dementia (Alzheimer's) for the last three to seven years, and therefore lacked the capacity to contract. Johnson did not contest the voiding of the contract in the Probate Court. Treamer soon died, and his home and personal property were subsequently sold to a third party for $217,000.

[¶ 5] Johnson filed a complaint in the Superior Court on October 2, 1998, asserting professional negligence and breach of contract claims against Carleton.[3] The court issued a pretrial order dated December 11, 1998, requiring the

---

1. Johnson also alleges that Vining took the contract to Carleton for approval, and that he received and paid a seventy-five dollar invoice on Carleton's office letterhead for the transaction.

2. Paragraph seventeen of the contract provided:

   **Default; damages.** If Seller shall fail to fulfill the Seller's agreements herein, all deposits made hereunder by Buyer shall be returned to Buyer as liquidated damages and this shall be Buyer's sole and exclusive remedy at law or in equity for any default by Seller under this Agreement.

3. A claim for medical malpractice is analyzed under tort law principles rather than contract law principles. *Woolley v. Henderson,* 418 A.2d 1123, 1134–35 (Me.1980). We have said that "although the physician-patient relationship is typically consensual in nature the existence of this relationship imposes a duty of due care which arises in negligence rather than in contract." *Id.* at 1134. Furthermore, "the implied contract theory merely imposes a duty that tort law would in any event require." *Id.* The rationale for this rule is threefold: (1) Implied contract theory is inadequate to meet the demands of situations in

which there is no contractual relationship, but in which the physician clearly owes a duty to the patient; (2) "[T]he reasonableness of the physician's conduct can be adequately determined under familiar tort principles without the necessity of importing into malpractice actions commercial concepts with traditionally distinct rules as to theory, proof, damages, limitation periods and venue."; and (3) "[R]ecognizing the continued vitality of implied contract as an independent cause of action would be fundamentally inconsistent with the modern view that malpractice actions should be predicated on a single basis of liability—deviation from the professional standard of care—with the application of common evidentiary and procedural rules." *Id.* at 1135.

This same rationale is equally applicable to legal malpractice claims. Legal malpractice claims should therefore be analyzed in tort rather than in contract as well. Claims regarding an *express* contract, however, such as an agreement to effect a particular outcome, are outside the scope of this rationale, and remain subject to a contract analysis. The claim against Carleton is for professional legal malpractice and is therefore treated as a negligence claim rather than a contract claim.

parties to designate expert witnesses within sixty days, that is by February 11, 1999. Johnson waited until August and September to designate three experts: an attorney, a real estate appraiser, and a personal property appraiser. The court struck Johnson's expert witness designations as untimely and denied Johnson's motion to enlarge the time in which to name his expert witnesses. *See* M.R. Civ. P. 26(b)(4)(A)(i).

[¶ 6] The court granted Carleton's subsequent motion for a summary judgment on the ground that Johnson "has not produced the necessary evidence to meet his burden of showing proximate causation." Johnson challenges both the denial of his motion for enlargement of time to designate expert witnesses and the grant of a summary judgment in favor of Carleton.

## I. Enlargement of Time to Designate Expert Witnesses

[¶ 7] Parties are required to disclose information regarding expert witnesses expected to testify pursuant to M.R. Civ. P. 26(b)(4)(A)(i). In this case, the court required that the parties designate their expert witnesses by February 11, 1999. Nevertheless, M.R. Civ. P. 6(b) authorizes the court to enlarge the time within which an act is required or allowed to be done, including the time for designating witnesses. If a party moves to enlarge the time to complete an act *after* the deadline for the act has passed, however, he must be able to show that his failure to act was the result of excusable neglect.

■ [¶ 8] In this case, Johnson did not designate any expert witnesses prior to the February 11 deadline, nor did he move, pursuant to Rule 6(b), to enlarge the time within which to do so prior to that date. In an attempt to justify his late designation of expert witnesses, Johnson argues that the scheduling order that required him to designate witnesses by February 11 prematurely conformed to the 1999 amendments to the Maine Rules of Civil Procedure rather than the 1998 version of the rules that were in effect when Johnson filed his complaint. Specifically, M.R. Civ. P. 16 was amended in 1999 to require the court to enter a scheduling order setting pretrial deadlines; the form scheduling order accompanying Rule 16 provided for witness designation within twelve weeks, or sixty days. The 1999 amendments were effective as of May 1, 1999, after Johnson's complaint was filed in October of 1998, and were not applicable to Johnson's case. Thus, Johnson contends, the court erred in holding him to the sixty day deadline that he argues was intended instead for cases filed after his. We disagree.

[¶ 9] We are not convinced that the amendments to Rule 16 had any impact on Johnson's late filing. Prior to the 1999 amendments, trial courts routinely set discovery deadlines, including the deadline for designation of expert witnesses. Johnson raised no objection to the trial court's order in this case requiring him to name his expert witnesses within sixty days. He acknowledges his failure to comply with the clear terms of the order. Furthermore, he did not move for an enlargement of time until months after that deadline had passed.

■ [¶ 10] Whether to grant or deny a motion for enlargement of time is the decision of the trial court. That court is best positioned to evaluate the circumstances of the case, and its decision is reviewed only for abuse of discretion. *Lane v. Williams,* 521 A.2d 706, 707 (Me. 1987). We have emphasized the need for compliance with pretrial orders, and have stated that sanctions are appropriate when conduct "frustrates the beneficent purposes of discovery orders . . . ." *Spickler v. York,* 566 A.2d 1385, 1388 (Me.1989). In this case, Johnson's conduct did just that, and he has offered nothing that would compel the trial court to conclude that his failure to comply with the order was the result of excusable neglect. Accordingly, the court acted within its discretion in

denying the motion for enlargement of time to designate expert witnesses.[4]

## II. Summary Judgment in Favor of Carleton

[¶ 11] If the evidence presented by a plaintiff who has the burden of proof on an essential element at trial is insufficient, and the defendant would thus be entitled to judgment as a matter of law on that state of the evidence at a trial, the defendant is entitled to a summary judgment. *Holland v. Sebunya*, 2000 ME 160, ¶ 8, 759 A.2d 205, 209. In reviewing a grant of summary judgment, we examine the facts in the light most favorable to the nonmoving party. *Id. See also Burke v. Port Resort Realty Corp.*, 1998 ME 193, ¶ 7, 714 A.2d 837, 839–40. It is Johnson's burden to establish the elements of professional negligence: (1) that Carleton breached a duty he owed to Johnson to conform to a certain standard of conduct, and (2) that such breach proximately caused Johnson's loss. *See Niehoff v. Shankman & Assocs.*, 2000 ME 214, ¶ 7, 763 A.2d 121.

[¶ 12] The basis of the entry of the summary judgment was Johnson's failure to allege any facts to establish the necessary element of proximate causation. Proximate cause requires a showing that "the evidence and inferences that may reasonably be drawn from the evidence indicate that the negligence played a substantial part in bringing about or actually causing injury or damage and that the injury or damage was either a direct result or a reasonably foreseeable consequence of the negligence." *Merriam v. Wanger*, 2000 ME 159, ¶ 8, 757 A.2d 778, 780–81. Proximate cause is cause that is "unbroken by an efficient intervening cause." *Id.* (quoting *Webb v. Haas*, 1999

ME 74, ¶ 20, 728 A.2d 1261, 1267). Johnson must show more than a "mere possibility" of proximate cause; evidence that requires speculation or conjecture by the factfinder entitles Carleton to judgment as a matter of law, thereby permitting a proper grant of a summary judgment. *See id.*

[¶ 13] Johnson's statement of material facts offers only the conclusory statement: "Had [the purchase and sale contract] been prepared in accordance with reasonable care, and reviewed with reasonable care by Mr. Carleton, the contract would have given Mr. Johnson the right to require Mr. Treamer's estate to sell him the home." For this proposition, Johnson cites only to a statement in Carleton's deposition that *if* Johnson was his client and *if* Johnson had asked for a specific performance provision, Carleton would have included it in drafting the contract.

[¶ 14] Johnson does allege that an attorney client relationship existed between him and Carleton, that Johnson asked Carleton to draft a contract that preserved his right to specific performance, that Carleton failed to do so in violation of a reasonable standard of care, that Treamer was competent, and that Treamer would have signed such a contract. In an action for legal malpractice, "a plaintiff must demonstrate that he or she would have achieved a more favorable result but for the defendant's alleged legal malpractice." *Niehoff*, 2000 ME 214, ¶ 9, 763 A.2d at 124. There is nothing in Johnson's Rule 7(d)(2) statement, however, sufficient to establish the necessary element of proximate cause—that the contract provision Johnson alleges should have been inserted in the contract would have resulted in a more favorable outcome in that

4. On Carleton's motion, the court also precluded Johnson from calling the expert witnesses that he had designated. The court has discretion to sanction a party for failure to comply with any rule or order made by the court, including pretrial scheduling orders, pursuant to M.R. Civ. P. 16(d). Such sanctions are reviewed for abuse of discretion. *Reeves v. Travelers Ins. Cos.*, 421 A.2d 47, 50 (Me.1980). In this case, the court's striking of Johnson's experts and denial of his motion to enlarge the time within which to designate those experts both operated to the same end—the exclusion of Johnson's expert witnesses.

Johnson would have been able to purchase Treamer's real estate and personal property for $75,300. In the circumstances of this case, expert evidence is necessary to prove that Carleton's failure to exercise reasonable care proximately caused the injuries his "client" Johnson alleges were suffered. *Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 13, 742 A.2d 933, 940.

[¶ 15] Contracts are not self-enforcing. In order to achieve his purpose of forcing Treamer to sell him the property for the contract price, Johnson would have been required to bring a lawsuit to enforce the contract. Defenses such as Treamer's incompetence at the time of the contract and undue influence could have and would have been raised by the guardian. Without the benefit of expert legal testimony, the factfinder would be forced to engage in speculation as to the enforceability of a specific performance provision in Johnson's contract with Treamer and the applicability of defenses that would be raised. Because he was late in designating his expert witnesses, Johnson is unable to present such expert testimony. Accordingly, his legal malpractice claim fails for lack of the required element of proximate causation.

The entry is:

Judgment affirmed.