STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

SUPERIOR COURT
CIVIL ACTION
2002 SEP 25 A DOCKET NO. RE-01-15
REC - CUM - 9/25/2002

MILDRED O. SMITH,
Individually and as
Personal Representative of the
Estate of WINFIELD SMITH

ORDER ON DEFENDANT'S MOTION
FOR PARTIAL JUDGMENT ON THE
PLEADINGS AND MOTION FOR
SUMMARY JUDGEMENT

v.

JOHN LOYD, et al.

DONALD L. GARBRECHT
LAW LIBRARY

OCT 4 2002

## FACTUAL BACKGROUND[1]

The following facts are undisputed: Defendant John Loyd (attorney) represented the Plaintiff Mildred Smith and her late husband Winfield Smith in their personal matters until Mr. Smith's death in September 1994. The Plaintiff was the sole beneficiary under her late husband's will. The real estate inherited under the will included three parcels of land on the Mere Point Peninsula in Brunswick, Maine. Only two parcels are at issue in this litigation; both of these parcels are located on the eastern side of Mere Point Road. One parcel has water frontage and an operational boat landing ("Boat Landing"). The second parcel has water views and frontage on Mere Point Road ("MPR Parcel").[2]

Following Winfield Smith's death, Plaintiff was in need of financial support and financial planning assistance. The Defendant and the Plaintiff met on several occasions to discuss how best to ensure her financial security with the estate assets. Included in

---

[1] Plaintiffs have moved for voluntary dismissal of Count II as to Defendant Loyd and Count III entirely. Defendant's Reply Statement of Material Facts does not conform to M.R. Civ. P. 56 (h)(3), which requires a reply to be "limited to any additional facts submitted by the opposing party." The Plaintiff's additional facts begin at paragraph 49; therefore, only replies to those additional facts are considered for purposes of this motion.

[2] The third parcel is on the western side of Mere Point Road and is commonly referred to as the "Family Farm."

this discussion was the appropriate disposition of the two parcels at issue in this case. The Plaintiff entered into a 99-year lease for the use of the Boat Landing without Defendant's knowledge. The Plaintiff believed that counsel for the lessee had reviewed the lease documents with Defendant Loyd.

Shortly thereafter, Plaintiff listed the adjacent property, MPR Parcel, for sale with David Gleason, a real estate agent. The MPR parcel was marketed as two separate parcels with a total asking price of $275,000 based upon a market valuation performed by Mr. Gleason. The signature line of the listing agreement did not indicate that Plaintiff was signing in her capacity as Personal Representative.[3] Loyd was not aware of the February 10, 1995 listing until after it had been executed.

A new listing agreement was drafted and signed on April 12, 1995, which included both the Boat Landing and the MPR Parcel for a list price of $300,000. That same day an offer was made to purchase the listed property. The next day, April 13, 1995, on her way to sign the purchase and sale agreement ("P&S"), Plaintiff was treated at the hospital for an "attack of nerves." Later that day Defendant Loyd went to the Plaintiff's home to have her sign the P&S. The Plaintiff signed the new listing agreement and the P&S for the two parcels (the Boat Landing and the MPR Parcel) in her capacity as Personal Representative in the amount of $300,000. After the P&S was executed by the Plaintiff, Defendant Loyd commissioned an appraisal of the entire estate property east of Mere Point Road; on May 10, 1995, Michael Olivo, the appraiser, reported a value of $250,000 to $270,000.[4] On June 19, 1995, Defendant Loyd received an

---

[3] Plaintiff contends that there was a typographical error and "PR" was omitted. The parties disagree as to why Defendant Loyd was not aware of the listing until after the fact (no notice by Plaintiff; lack of attentiveness on the part of Defendant).

[4] The circumstances of the appraisal and the direction, if any, given to Mr. Olivo by Defendant Loyd are disputed.

2

offer of $100,000 from the current tenant of the property for the five acres surrounding and including the boat landing.

On July 19, 1996, Plaintiff signed a second amendment to the P&S increasing the sale price to 305,000.[5] On August 8, 2001, plaintiff commissioned a retroactive appraisal of the property to ascertain its value in 1994. The appraisal determined that as of September 6, 1994 the property was valued at $612,000. This appraisal was commissioned almost six months after the filing of the complaint on February 28, 2001.

Mildred Smith filed a seven-count complaint against Defendant Loyd. Defendant Loyd moves for partial judgment on the pleadings (Counts II and III), and for summary judgment. Plaintiff only opposes the Defendant's Motion for Summary Judgment on Counts IV (Negligence) and VII (Breach of Fiduciary Duty). The Plaintiff agrees to dismiss the remaining two counts against Defendant Loyd (Count II – Fraudulent Misrepresentation; and Count III - Intentional Infliction of Emotional Distress). For the reasons stated below, Defendant's Motion is granted as to Count VII and Plaintiff's request for punitive damages; Defendant's motion as to Count IV is denied and shall proceed to trial, but not under the theory of negligence resulting from failure to adhere to Maine Probate Code.

## DISCUSSION

1. Standing

Defendant asserts that Plaintiff lacks standing to sue as an individual because he never represented her in that capacity. Instead, he asserts that his representation pertained only to her role as the Personal Representative of the Estate of Winfield Smith. The status of a party sufficient to confer standing presents a mixed question of law and fact. Bissias v. Koulovatos, 2000 ME 189, ¶ 6, 761 A.2d 47, 49. An attorney-

_____

[5] The first amendment was signed on June 19, 1995, which extended the time to two years for the closing because of the litigation surrounding the long-term lease for the Boat Landing.

client relationship is established when "(1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance." Board of Overseers of the Bar v. Mangan, 2001 ME 7, ¶ 9, 763 A.2d 1189, 1193 (citations omitted). The parties vehemently disagree as the scope of Defendant Loyd's representation. Weighing the underlying disputed facts surrounding the extent and purpose of the relationship between Attorney Loyd and Mildred Smith is a task properly left to the fact finder at trial.[6]

Because it cannot be determined from the record of undisputed facts whether the relationship between Mildred Smith and Attorney Loyd was one of Attorney-Personal Representative and Attorney-Client, or only the former, Defendant's Motion for Summary Judgment as to Plaintiff's standing as an individual is denied.

2. Negligence

Plaintiff raises two claims for negligence – professional malpractice and breach of fiduciary duty.

A. Fiduciary Duty

A fiduciary duty is created when "[o]ne standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation." Bryan R. v. Watchtower Bible and Tract Soc'y of New York,

---

[6] Defendant characterizes the "individual suit" as an action by a beneficiary and thus argues that the suit is barred. Nevin v. Union Trust Co., 1999 ME 47, ¶¶ 40-41, 726 A.2d 694, 701 (holding that individual beneficiaries lack standing to assert claims against estate planning attorneys). Defendant's characterization is incorrect, as is his application of Nevin to the facts in this case. First, the Plaintiff alleges a separate attorney-client relationship with the Defendant before and during the settling of the estate, not a relationship resulting solely from her status as a beneficiary. Second, the effect of Nevin is to recognize and address the difficulty an estate planning attorney encounters trying to serve the disparate interests of multiple beneficiaries. Mildred Smith was the sole beneficiary to her late husband's estate.

4

Inc., 1999 ME 144, ¶ 15, 738 A2d 839, 845. (quoting RESTATEMENT (SECOND) OF TORTS 874 (1965)). A fiduciary, or confidential relationship requires "the actual placing of trust and confidence in fact by one party in another," and "a great disparity of position and influence between the parties to the relation." Id.

Plaintiff, as required, has made a prima facie case for the existence of a fiduciary duty. However, there appears to be no reason to recognize a fiduciary duty separate from the contractual duty owed to the client by the attorney in this case: The Plaintiff has presented prima facie evidence of a attorney-client relationship, in addition to an attorney-personal representative relationship that is admitted. Id.; Bookland of Maine v. Baker, Newman & Noyes, LLC, 206 F.Supp.2d 38, 39 (D. Me. 2002). Because the fraudulent misrepresentation claim has been dismissed, there are no allegations of breach of duty that are not recoverable under the professional malpractice claim (Count IV). Id. (offering the example of a breach by fiduciaries trying to enrich themselves at the plaintiff's expense). Furthermore, "the same rules of causation apply whether the cause of action sounds in contract, negligence, or breach of fiduciary duty." Steeves v. Bernstein, Shur, Sawyer & Nelson, P.C., 718 A.2d 186, 190, 1998 ME 210 n 8.

This Court determines that no separate cause of action arises from the existence of a fiduciary duty owed to an individual, when the cause of action is also premised on a negligence theory alleging legal malpractice. Certainly, an attorney has a fiduciary duty to his client, whether an individual or a Personal Representative of an Estate. That duty remains the same whether characterized as a fiduciary duty or a duty to exercise the degree of skill, care, and diligence exercised by members of that same profession. Fisherman's Wharf Associates II v. Verrill & Dana, 645 A.2d 1133, 1136 (Me. 1994); Rowe v. Bennett, 514 A.2d 802, 804 (Me. 1986).

B. Professional Malpractice

The second negligence claim is in the form of a legal malpractice claim. Attorneys owe to all clients, whether individuals or personal representatives of an estate, a duty to exercise the degree of skill, care, and diligence exercised by members of the legal profession. Fisherman's Wharf Associates II v. Verrill & Dana, 645 A.2d 1133, 1136 (Me. 1994); Rowe v. Bennett, 514 A.2d 802, 804 (Me. 1986). A successful legal malpractice claim requires the Plaintiff to prove an attorney: 1) breached a duty of care owed the client; and 2) that the lack of care was a proximate cause of loss. Johnson v. Carleton, 2001 ME 12, ¶ 11, 795 A.2d 571, 575; Steeves v. Bernstein, Shur, Sawyer & Nelson, P.C., 1998 ME 210, ¶ 12, 718 A.2d 186, 190; Spickler v. York, 566 A.2d 1385, 1390 (Me. 1989) (noting that "more than a mere possibility that [the defendant attorney's] negligence, if any, might have caused [the plaintiff's] loss ... is necessary to establish that [the] conduct was the proximate cause of [the plaintiff's] loss") (alteration in original).

The Plaintiff in the present case argues a breach of duty on the part of Defendant Loyd under three theories: i) violation of the Probate Code 18-A M.R.S.A. §§ 3-706 and 3-707; ii) breach of duty of care by obtaining Plaintiff's signature when she was ill and confused; and iii) breach of duty of care concerning the valuation of the real estate.[7]

### i. 18-A M.R.S.A. §§ 3-706 and 3-707

Plaintiff's assertion that Defendant violated a duty of care to her based upon his failure to conform his actions to the requirements of the Probate Code misunderstands those requirements. 18-A M.R.S.A. § 3-706 (2000) states in relevant part that "a personal representative . . . shall prepare and file or furnish an inventory of property." Section 3-707 states that the "personal representative . . . shall employ an appraiser for determining the value of real estate." 18-A M.R.S.A. § 3-707 (2000).

---

[7] Plaintiff alleges that Defendant failed to obtain a soil test and a timely appraisal. Plaintiff further alleges that Loyd failed to question the appropriateness of a sales price of $300,000 for both parcels, which included the Boat Landing/waterfront parcel. The non-waterfront parcel was

Plaintiff's primary concern is Defendant's failure to commission an appraisal from a certified appraiser. The statute, however, only requires the employment of an appraiser not a "certified/licensed appraiser." Id. The Court finds support for this distinction in two areas: the Probate Code and common sense. One of the underlying purposes of Maine's Probate Code is to "promote a speedy and efficient system for liquidating the estate of the decedent." 18-A M.R.S.A. § 1-102(b)(3). Requiring an appraisal by a certified appraiser in every instance property is transferred through a probate estate may unnecessarily undermine the speed and efficiency that the Probate Code fosters.[8] Such construction also ignores the fact that the Legislature is aware of the certification process of an appraiser and could have used the term certified appraiser, if it chose to do so. 32 M.R.S.A. § 14004 (exempting real estate brokers from the requirements of certified appraisers).

Even accepting Plaintiff's argument that due to her financial naïveté the Defendant had a duty to assist her in preparing the inventory, Defendant Loyd did not breach his duty by relying on the valuation provided by the Plaintiff's own real estate agent, Mr. Gleason. This Court does not construe the Probate Code to require the employment of a *certified appraiser* to determine a value of property prior to sale. It follows, therefore, that the first valuation (by Gleason) was valid and the Defendant's reliance on it for probate inventory purposes was not negligent. Moreover, the personal representative has suffered no loss proximately caused by her failure to comply with ¶3-706.

ii. Meeting with an Ill and Confused Client

---

listed at $275,000 alone and represented only fifty-five percent of the total land ultimately sold in this transaction.

[8] For example, a certified appraisal of estate property would not be necessary in instances of a spouse-to-spouse transfer at death because there are no federal estate tax ramifications and there is no sale.

Plaintiff asserts, supported by expert testimony, that it was negligent of the Defendant to obtain her signature to a legal instrument while she was ill, confused, and recovering from an emergency room visit for her "nerves." The parties dispute Plaintiff's condition and appearance at the time of the signature. If Plaintiff was in a condition that would cause a normal diligent attorney to postpone the signing or, at a minimum, inquire further as to her condition before signing, then a reasonable jury could find that a duty was breached without resorting to speculation. Merriam v. Wanger, 2000 ME 159, ¶ 8, 757 A.2d 778, 780-81 (stating that facts that require pure speculation and conjecture in order to find causation dictate summary judgment for the defendant). The dispute of material facts regarding the Plaintiff's actual condition at the time of the April 13, 1995 signature is sufficient to require a trial of the facts. Johnson v. Carleton, 2001 ME 12, ¶ 14, 765 A.2d 571, 575-76.

iii. Breach of Duty in Real Estate Transactions

Plaintiff's third theory of recovery for the alleged negligence of the Defendant appears to be Defendant's general failure to exercise the degree of skill, care, and diligence exercised by lawyers when assisting an individual client or a personal representative with the sale of real estate. Breach of duty requires a factual analysis and is the province of the jury. Budzko v. One City Center Associates Ltd. Partnership, 2001 ME 37, ¶ 10, 767 A.2d 310, 313 (duty landowner to invitees); Lewis v. Knowlton, 1997 ME 12, ¶ 10, 688 A.2d 912, 914 (general negligence in auto accident); Joy v. Eastern Maine Medical Center, 529 A.2d 1364, 1366 (Me. 1987) (medical malpractice).

In order to survive a defendant's motion for summary judgment, a plaintiff must also establish a prima facie case for each element of her cause of action. Curtis v. Porter, 2001 ME 158, ¶ 8, 784 A.2d 18, 22. Proximate cause is one of the required elements of a legal malpractice claim. Johnson v. Carleton, 2001 ME 12, ¶ 11, 795 A.2d

571, 575.   Defendant contends that his actions could not be the proximate cause of Plaintiff's injuries because she twice had the opportunity to allow the P&S to lapse, but instead she signed amendments.   Plaintiff responds that she relied on Defendant's advice in signing each of those two amendments.   Therefore, Defendant's advice to save the P&S from lapsing was a continuation of the original negligent act or additional separate and distinct negligent acts, for which she is entitled to recovery.  Such a dispute requires a trial to resolve the issue.

3. Punitive Damages

Plaintiff also seeks punitive damages arising from the negligence claim. "Punitive damages will . . . be available . . . where deliberate conduct by the defendant, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward a person injured as a result of that conduct can be implied." Tuttle v. Raymond, 494 A.2d 1353, 1361 (Me. 1985).  However, "'implied' or 'legal' malice will *not* be established by the defendant's mere reckless disregard of the circumstances. Newbury v. Virgin, 2002 ME 119, 802 A.2d 413 quoting Tuttle v. Raymond, 494 A.2d 1353, 1361 (Me. 1985).   The Court must reject claims for punitive damages that do not demonstrate "adequate proof that the defendant acted in a sufficiently culpable manner." Tuttle v. Raymond, 494 A.2d 1353, 1361 (Me. 1985).   In the present case, the Defendant's alleged failure to conduct adequate due diligence in the Plaintiff's real estate transactions does not rise to the level of intentional outrageous conduct.

The Plaintiff relies on McAllister v. Slosberg, 658 A.2d 658, 660 (Me. 1995), which upheld a trial court's award of punitive damages when an attorney's intentional misrepresentations and failure to file an appeal caused a loss to the client.  In the instant case, the Plaintiff has not demonstrated "intentional misrepresentations" on

9

Defendant's part. Plaintiff must support a request for punitive damages with clear and convincing evidence of the Defendant's implied malice. <u>Tuttle v. Raymond</u>, 494 A.2d 1353, 1361 (Me. 1985). Having failed to offer any factual basis to support such a finding, punitive damage are unavailable as a matter of law.

For the above stated reasons the Defendant's Motion for Summary Judgment as to Count IV is denied; the Plaintiff may not continue to trial on the theory of negligence based upon a violation of the Maine Probate Code (*supra* section i.).

The entry is

Defendant's Motion for Judgment on the Pleadings is GRANTED without objection;
Defendant's Motion for Summary Judgment is GRANTED as to Count VII and punitive damages.
Defendant's Motion for Summary Judgment is DENIED as to Count IV.

Dated in Portland, Maine this 24th day of September, 2002.

_____
Robert E. Crowley
Justice, Superior Court

10

Date Filed ___02-02-01___ ___Cumberland___ Docket No. ___RE-01-15___
County

Action __Real Estate__

David(Amen

| Mildred O. Smith, Individually and as Personal Representative of the Estate of L. Winfield Smith | John F. Loyd, Jr. Esq. ~~John Gleason, Dana L. Smith and Bettina O. Smith, Husband and Wife, and Michael W. Olivo~~, ~~IFAS~~ dismissed 5-10-02 |

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Scott J. Lynch, Esq.<br>P.O. Box 116<br>Lewiston, Maine 04243 | ~~Peter LaFond, Esq. (Olivo) 871-77~~70<br>~~22 Free St., Portland, ME 04101~~<br>John McCarthy (J. Loyd)<br>PO BOX 1401, Bangor 04401 &Anthony Pellegrin Esq.<br><br>David Gleason PRO SE<br>82 Pleasant Street, Brunswick 04011<br><br>~~Ronald Lupton Esq. (Dana/Bettina Smit~~<br>~~707 Sable Oaks Dr., SP ME 04106~~<br>~~Stoddard Smith, Esq, PO Box 1018, Brunswi~~<br>~~721-0622~~ |

| Date of Entry | |
|---|---|
| Feb. 5 | Received 02-02-01<br>Summary Sheet Filed. |
| "    " | Complaint with Exhibit's A - E Filed. |
| Feb. 28 | Received 02-28-01:<br>Summary Sheet filed. |
| "    " | Plaintiff, Mildred O. Smith Amended Complaint with Exhibits A thru E filed. |
| March 08 | Received 03-08-01:<br>Summons filed showing return of service on 02-26-01 upon Dana Smith. |
| "    " | Summons filed showing officer's return of service on 02-26-01 upon Bettina O. Smith, to Dana Smith. |
| "    " | Summons filed showing officer's return of service on 02-26-01 upon Michael Olivo. |
| Mar. 9 | Received 3-9-01.<br>Summons filed showing officer's return of service on 3-2-01 upon Bettina O. Smith. |
| "    " | Summons filed showing officer's return of sevice on 3-2-01 upon Dana L. Smith to Bettina O. Smith, wife. |
| "    " | Summons filed showing officer's return of service on 3-2-01 upon David C. Gleason. |
| "    " | Acknowledgment of receipt of summons and complaint showing service on 3-2-01 upon John F. Loyd, Jr. Esq. |
| March 13 | Received 3-13-01.<br>Defendant Michael W. Olivo's Answer to Amended Complaint filed. |
| Mar. 20 | Received 3-19-01.<br>Defendant, John F. Loyd Jr. Esq's., defenses and answer to plaintiffs' complaint filed. |
| "    " | Summons filed showing officer's return of service on 3-5-01 upon Michael Olivo filed. |
| "    " | Defendant, David C. Gleason's, answer to plaintiff's amended complaint filed. |