STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-18-494

HOPE CHAMPAGNE,

Plaintiff,

v.

ORDER

TIM ZERILLO, ESQ., et al.,

Defendants

Before the court are three motions filed by defendants Tim Zerillo, Zerillo Law LLC, and John Burke (the "Zerillo defendants"): (1) a motion for summary judgment, (2) a motion to exclude plaintiff's expert, and (3) a motion for Rule 11 sanctions.

This is a legal malpractice action brought by Hope Champagne against the Zerillo defendants. Champagne was represented by the Zerillo defendants in connection with a lawsuit that Champagne brought against the Deliverance Center Church, against Steven Reynolds, the pastor of that church,[1] against certain entities affiliated with the Deliverance Center Church, and against an individual named Charles Knox. *Champagne v. Knox, et al.,* Docket No. CV-13-128 (Superior Court Cumberland County).

The gravamen of Champagne's complaint in CV-13-128 was that she was brought up within the Deliverance Church congregation and attended its church school. CV-13-128 Complaint ¶¶ 11-15 (A copy of the complaint is annexed to Champagne's Opposing Statement of Material Facts and is relied on by both parties). During that time she alleged that she was sexually molested by Charles Knox, beginning in 2003, when she was 13 years old, through 2007. *Id.* ¶¶ 25-26, 58, 66.

---

[1] Champagne's complaint originally named the Estate of James Reynolds, the father of Steven Reynolds and a prior Pastor of the Deliverance Church, as a defendant as well. The summary judgment record does not reveal what happened to Champagne's claim against the Estate, but the Estate was apparently dropped from the action at some stage in the case.

The CV-13-128 complaint alleged that Knox was a member of the Deliverance Church who performed various activities for the Church and whose contact with Champagne arose from those activities. *Id.* ¶¶ 20, 24. It further alleged that Champagne had reported Knox's abuse to Pastor Reynolds when the abuse began, that he instructed her not to tell anyone, and the Church and Pastor Reynolds took no action to protect her from Knox's continuing abuse even though the nature of her relationship to the Church meant that they had a fiduciary duty to do so. *Id.* ¶¶ 28, 35, 45-51, 64-65, 96-101, 117-21, 179-83.

Champagne sought compensatory and punitive damages against the church and its affiliated entities and against Pastor Reynolds for negligent supervision and breach of fiduciary duty. She separately sought compensatory and punitive damages against Knox for battery, assault, invasion of privacy, and intentional infliction of emotional distress.

Represented by Zerillo and Burke, Champagne settled her claims against the Deliverance Church and Pastor Reynolds for $63,000 and a letter of apology after a judicial settlement conference held on October 31, 2013. Zerillo agreed to reduce the attorney's fee to which he would otherwise have been entitled so that Champagne would receive a larger net recovery.

Thereafter Champagne proceeded to trial on her claims against Charles Knox, who was not represented by counsel. After a bench trial in the spring of 2014, she obtained a judgment for $350,000 in compensatory damages and $150,000 in punitive damages against Charles Knox. *Champagne v. Knox, et al.,* Docket No. 13-128 (Superior Court Cumberland County, judgment dated July 17, 2014) (Mills, J.).

Champagne's claim in this action is that the Zerillo defendants committed malpractice in connection with the $63,000 settlement she obtained against the church and the pastor. She specifically alleges she settled against the church and the pastor because Zerillo and Burke negligently advised her that she was unlikely to recover any substantial amount beyond the $50,000 limit in the Church's insurance coverage for sexual molestation claims.

Because the motion for summary judgment largely resolves the case, the court will address that motion first.

2

## Summary Judgment Standard

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Mahar v. StoneWood Transport*, 2003 ME 63 ¶ 8, 823 A.2d 540. The facts must be considered in the light most favorable to the non-moving party. *Id.* Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Kenny v. Department of Human Services*, 1999 ME 158 ¶ 3, 740 A.2d 560.

Summary judgment is governed by M.R.Civ.P 56, and in this case the Zerillo defendants contend that Champagne has egregiously violated certain provisions of Rule 56.

## Deficiencies in Plaintiff's Rule 56 Submissions

The court agrees that in many cases Champagne's submissions violate the letter and spirit of Rule 56. In certain cases, instead of denying or qualifying the assertions in the Zerillo defendants' Rule 56(h)(1) statement in a short and concise factual statement with appropriate citations to the record, Champagne has offered lengthy and argumentative responses that are not infrequently unsupported by any citations to the record. *See, e.g.,* Champagne's Opposing Statement of Material Facts dated January 20, 2020 ¶¶ 4, 9 (lengthy argument); ¶ 12 (denial without supporting citations); ¶¶ 18-19, 22, 24, 29-30 (qualifications without supporting citations).

Portions of Champagne's Statement of Additional Material Facts (SAMF) also consist largely of lengthy arguments rather than short and concise statements of the specific factual assertions that Champagne contends raise disputed issues for trial. *See* Champagne SAMF ¶ 1

3

(consisting of almost two pages), ¶ 10 (paragraph consisting of almost three pages quoting portions of the decision rendered by Justice Mills after the bench trial against Charles Knox).

The Zerillo defendants justifiably also object to the 15-page "factual background" portion of Champagne's memorandum in opposition to summary judgment, noting that it is untethered to any citations to the summary judgment record and recites some alleged facts and details that are nowhere contained in any of the Rule 56(h) statements.

Finally, Champagne submitted a purported Rule 56(i) response to the Zerillo defendants' Reply Statement of Material Facts that does not consist of a brief statement of why factual assertions in her SAMF should be considered despite defendants' objections – which is what is permitted by Rule 56(i). Champagne's submission instead consists of 11 pages that can only be described as an attempted closing argument and improper sur-reply without any citations to the summary judgment record. The court disregards that submission in its entirety.

While the summary judgment rule has been criticized as overly technical, its purpose is to allow the court to target whether there are disputed facts for trial, as opposed to wallowing in lengthy legal arguments and attempting to discern whether they are factually supported. Champagne's Rule 56 submissions essentially subvert that purpose.

The Zerillo defendants argue that Champagne's Rule 56 response is so deficient that summary judgment should be granted against Champagne under the Law Court's decision in *First Tracks Investments LLC v. Murray, Plumb & Murray,* 2015 ME 104 ¶¶ 2-3, 121 A.3d 1279. Champagne's Rule 56 submissions resemble the filings criticized in *First Tracks* in that, whether intentionally or not, they have the effect of obfuscating the issues rather than allowing the court to focus on whether there are disputed issues for trial. Whether they are so deficient to justify summary judgment is a close question.

4

Ultimately, despite the many inadequacies in Champagne's summary judgment submissions, the court is able to discern the substance of Champagne's claims against the Zerillo defendants and to conclude that the Zerillo defendants are entitled to summary judgment because Champagne has not raised a disputed issue for trial on the issue of causation. As a result, it does not need to determine whether summary judgment should also be granted against plaintiff based on *First Tracks*.

Absence of Evidence that Plaintiff Would Have Obtained More Favorable Result

In legal malpractice cases, the Law Court has repeatedly ruled that a fundamental requirement of the plaintiff's claim is proof of causation – that the lawyer's alleged failure to meet the standard of care caused actual detriment to the plaintiff, not just speculation that in the absence of the lawyer's negligence there might have been a more favorable result. The was re-emphasized most recently in *Reppucci v. Nadeau,* 2020 ME 114 ¶ 7, 238 A.3d 994:

> [A] plaintiff must demonstrate that he or she would have achieved a more favorable result but for the defendant's alleged legal malpractice. Without such proof, the existence of a causal connection between the negligent conduct and any damages is speculative or conjectural, and cannot support a judgment favorable to the plaintiff.

*See id.* ¶ 11. *Accord, Brooks v. Lemieux,* 2017 ME 55 ¶¶ 14, 19, 157 A.3d 798; *Allen v. McCann,* 2015 ME 84 ¶ 9, 11, 120 A.3d 90; *Corey v. Norman Hanson & DeTroy,* 1999 ME 196 ¶ 13, 742 A.2d 933.

The basis of the Zerillo defendants' motion for summary judgment is that Champagne has failed to offer sufficient evidence to demonstrate that there is a disputed issue for trial on whether she would have achieved a more favorable result but for the alleged negligence of Zerillo and Burke in connection with the settlement.

5

As far as the court can tell,[2] Champagne's expert witness, Attorney Evan Smith, has offered essentially three criticisms of Zerillo and Burke, all of which focus on the $50,000 limit in the church's insurance policy on sexual molestation claims. The first is that Zerillo and Burke should have pursued the possibility that there were other applicable insurance policies. The Zerillo defendants deny that they were negligent in relying on the discovery responses they received with respect to insurance. However, the short answer on this issue is that Champagne has offered no admissible evidence that any additional insurance actually existed. Attorney Smith acknowledged that he did not know whether or not there was any other insurance or source of funds to satisfy a judgment, Smith Dep. 108-110, and Champagne has not pointed to evidence of other policies.[3] Even assuming that Zerillo and Burke should have conducted more discovery, speculation that there could have been other insurance is insufficient to constitute evidence that Champagne could have obtained a more favorable result.

Smith's second criticism is that Zerillo and Burke did not adequately pursue an argument that Champagne would have been entitled to recover under the insurance coverage for claims arising from acts or omissions with respect to the furnishing of counseling. The first problem with this contention is that the counselling coverage specifically excludes injury "arising out of" any actual or alleged sexual molestation. Exclusion 2(i), found at Policy A500(01-98), page 2 of 5 (Bates stamp ZERILLO 00480). The record demonstrates that while Champagne did complain about the counselling she received from the pastor, her counselling complaints all stem from her

---

[2] It is not easy to distill the criticisms Champagne is making. For instance, her Opposing SMF twice refers to lengthy excerpts from Smith's deposition rather than to specific pages or paragraphs as called for by Rule 56(h)(4). *See* Champagne Opposing SMF ¶ 4 (citing to Smith Dep. 78-88); Champagne Opposing SMF ¶ 9 (citing to Smith Dep. 155-61).

[3] Champagne testified that she had heard that other insurance may have existed, but non-specific hearsay of that nature is not admissible evidence that can create a disputed issue for trial. In addition, Champagne has not offered any evidence that the church or the pastor had any other significant assets that could have been used to satisfy a judgment in excess of the policy limits.

disclosure of the sexual molestation by Charles Knox to the pastor and the church's failure to remove Knox, instructions by the pastor that Champagne not report the abuse to the police, the church's failure to report the abuse to the police, and the church's failure to take any other action to protect Champagne. Champagne Dep. 203-05, cited, *inter alia*, in Champagne's Opposing SMF ¶ 2. To the extent this could otherwise fall within the coverage for counselling incidents, it clearly arises out of sexual molestation, and coverage would have been unavailable under the above-cited exclusion.[4]

The second problem with this argument is that Smith did not opine that Champagne would have obtained a more favorable result if Zerillo and Burke had tried to argue that she could recover under the counselling coverage and to ignore the exclusion in that coverage. At most he argued that this was "something that should be explored" and "something to consider." Smith Dep. 157, 161. And while that may constitute an opinion that Zerillo and Burke were remiss in not "exploring" the issue, it does not constitute an opinion that they would have obtained a more favorable result if they had done so.

In this connection it bears emphasis that even if Smith had offered a conclusory opinion that a more favorable result would have been obtained under the counselling coverage, that would not have been sufficient without some evidence or legal authority to substantiate that opinion. *See Brooks v. Lemieux*, 2017 ME 55 ¶¶ 18-19. The same would be true generally of any conclusory suggestion that a more favorable settlement could have been extracted. That would depend on whether the other parties to the settlement would have been willing to offer more – something that cannot simply be assumed. *See Allen v. McCann*, 2015 ME 84 ¶ 11. And although Champagne now states that she wishes she had not settled and had gone to trial, as

---

[4] Interpretation of an insurance policy provision is an issue of law. *E.g., Jipson v. Liberty Mutual Fire Insurance Co.*, 2008 ME 57 ¶ 6, 942 A.2d 1213. This is not an issue on which Champagne could have offered contrary expert testimony.

discussed below, the summary judgment record is devoid of any expert opinion by Smith that she would have obtained a more favorable result if she had gone to trial.

Smith's third criticism of Zerillo and Burke is that in evaluating their case, they did not advance the argument that the $50,000 limitation on claims for sexual molestation would allow multiple claims of up to $50,000 each if Champagne had been molested by multiple individuals. The applicable policy provisions limit the available coverage to $50,000 for "each claim" of Sexual Misconduct or Sexual Molestation with an aggregate limit of $150,000. General Liability Coverage Declarations Page (Bates stamped ZERILLO 00394).[5] Under the policy all injuries arising out of sexual misconduct or sexual molestation by the same person or by two or more persons acting together, no matter how many acts are involved, are considered to be one claim subject to the $50,000 limit. Section G, Limits of Insurance ¶ 6 (Bates stamped ZERILLO 00445).

Champagne argues that there was evidence of sexual molestation by multiple persons (not acting together) and therefore the Zerillo defendants could have argued that Champagne had multiple sexual molestation claims, each subject to a $50,000 limit. Her expert witness pointed to two other potential perpetrators of abuse. One was someone named "Keith" who Champagne said had engaged in some inappropriate touching when he took kids to get ice cream. Champagne Dep. 111-12.[6] The other was Raymond Champagne, a man whom Hope had married

---

[5] The policy also provides:
> Except for the insurance provided by the Sexual Misconduct or Sexual Molestation Liability Coverage, the policy does not apply to . . . any claim or suit seeking damages arising out of any actual or alleged act of "sexual misconduct or sexual molestation" including damages on account of any negligent hiring or transfer of, failure to supervise, or failure to dismiss any employee or volunteer worker alleged to have committed any act of "sexual misconduct or sexual molestation."

General Liability Coverage, Section C. 1 (Bates stamped ZERILLO 00443).

[6] Champagne said this person was named "Keith;" Smith referred to him as 'the cheeseburger man."

when she was 17 or 18 and who appears to have been around 40 years old at that time. Champagne Dep 77-81.

The difficulty with this argument is that the record provides no support for a successful claim against the Church based on either Keith or Raymond Champagne. The record does not contain any evidence that either was employed by or served as an agent of the church. Hope Champagne testified at her deposition that she and another girl reported Keith's behavior, that Keith was subsequently not allowed to take kids to get ice cream, and that Keith "wasn't there long." Champagne Dep. 112-14.

With respect to Raymond Champagne, she testified that she now believes that, as a teenager, she was in a relationship with a predator because of the age difference. At the time, however, she did not feel it was abuse and thought she loved him. Champagne Dep. 72, 78, 81. She never reported to anyone at the church that Raymond Champagne had engaged in any abuse. Champagne Dep. 98.

A claim for breach of a fiduciary relationship against a church requires, not just that a "special relationship" exist, but that the church know or should have known of the risk of harm presented by a potential predator and took no action. *See Fortin v. Roman Catholic Bishop of Portland,* 2005 ME 57 ¶ 38, 871 A.2d 1208. In the case of Keith, there is no evidence that the church did not take appropriate action when Keith's behavior was reported. In the case of Raymond Champagne, there is no evidence in the record that – at the time in question – there was any reason to believe that any sexual activity had occurred before Hope was 16 or that the subsequent relationship between Raymond and Hope was not consensual.[7]

---

[7] Hope testified that she had a sexual relationship with Raymond Champagne when she was 17 and some kind of quasi-marriage ceremony occurred at that time so that they would not be seen as living in sin. Champagne Dep. 80-81. There is no evidence in the record that there was any conduct by Raymond Champagne when Hope was under the age of 16 that could have constituted sexual abuse of a minor in violation of 17-A M.R.S. § 254(1)(A). The record also reflects that although Hope and Raymond

9

As a result, the record does not support any claim that, if the Zerillo defendants had pursued an argument that there were multiple predators, they would have been able to prove any violations of the church's fiduciary duty except as to the claim involving sexual molestation by Charles Knox – on which they recovered more than the $50,000 limit under the insurance policy. To the extent that Attorney Smith can be construed as opining that the Zerillo defendants would likely have achieved a better result if they had pursued a multiple predator theory, therefore, it would constitute the kind of conclusory and unsubstantiated opinion that is insufficient to defeat a motion for summary judgment under *Brooks v. Lemieux*, 2017 ME 55 ¶¶ 18-19.

The foregoing discussion demonstrates that the Zerillo defendants are entitled to summary judgment in this case because, although Champagne herself has other criticisms of the Zerillo defendants, the plaintiff in a legal malpractice case must establish causation – that a more favorable result would have been obtained absent the defendants' negligence – through expert testimony. *Brooks v. Lemieux*, 2017 ME 55 ¶ 14; *Johnson v. Carleton*, 2001 ME 12 ¶¶ 14-15, 765 A.2d 571. One of the disconnects in this case is that, although the remedy that Champagne is seeking in this case is money damages from the Zerillo defendants, the impetus behind this lawsuit appears to be that, in retrospect, she wishes she had proceeded to trial rather than agreeing to a settlement. This is not because of a belief that she would necessarily have recovered more money but rather because she wishes the church and the pastor had been required to face a judge or a jury. *E.g.*, Champagne Dep. 157-58 ("It wasn't about the money").

Champagne's regret about agreeing to settle partially stems from the judgment she subsequently obtained in her bench trial against Charles Knox – a judgment against a pro se

---

Champagne eventually divorced, they were still married, although separated, at the time that Hope was represented by the Zerillo defendants on her claim against the church. Champagne Dep. 96-97; Smith Dep. 100-01.

defendant that she has never made any attempt to collect. Champagne Dep. 170.[8] In hindsight, this apparently has led Champagne to believe that she should not have settled against the church. It bears emphasis that the conduct of the Zerillo defendants cannot be judged in hindsight. As noted above, even if Champagne now thinks she would have obtained more personal satisfaction by going to trial, she agreed to the settlement at the judicial settlement conference. She has not offered any evidence that her agreement to settle was improperly coerced by the Zerillo defendants. Most importantly for purposes of summary judgment, her expert has not offered any opinion that, if she had gone to trial, she would have recovered more than she obtained in the settlement.

Defendants' Motion to Exclude Plaintiff's Expert

At the same time as they moved for summary judgment, the Zerillo defendants also moved to exclude the testimony of plaintiffs' expert, Attorney Evan Smith, on the ground that he is not qualified by training or experience to offer the opinions relied on by Champagne and that his opinions are inherently unreliable.

As noted above, the court has concluded that while Attorney Smith's opinions may constitute criticisms of the Zerillo defendants' performance, he either has fallen short of providing opinions that Champagne would have obtained a more favorable result in the absence of the alleged deficiencies or has offered only conclusory and unsubstantiated opinions to that effect. Because this means that defendants are entitled to summary judgment, the court need not separately address defendant's motion to exclude plaintiff's expert, and that motion is moot.

---

[8] The opinion by Justice Mills recites that Pastor Reynolds testified, on behalf of Knox, that the conduct between Knox and Champagne had been consensual – testimony which Justice Mills found was not credible. Champagne contends that the Zerillo defendants had predicted that Reynolds would not seek to defend Knox's conduct, but she has offered no evidence that – before the settlement – they had any reason to believe otherwise.

11

## Defendants' Motion for Rule 11 Sanctions

The final issue to be addressed is the Zerillo defendants' motion for Rule 11 sanctions. In part, this is based in part on the plaintiff's violations of the rules governing summary judgment, in part on conduct by plaintiff's predecessor counsel, and in part because this case, according to the Zerillo defendants, was frivolous from its inception. Although defendants has not specified the sanction they are seeking, the only realistic sanction that would be available under the circumstances of this case would be an award of attorney's fees, either against plaintiff or her counsel.

As discussed above at pages 3-4, this court agrees that plaintiff's summary judgment submissions were in many cases seriously deficient and, whether intentionally or not, obfuscated the issues rather than illuminating them. Although the basis of defendant's summary judgment motion was the absence of evidence of causation, plaintiff offered scant evidence to substantiate her claim that the Zerillo defendants were negligent in obtaining a $63,000 settlement. She offered no cognizable evidence that she would have received a more favorable result in the absence of their alleged negligence. She now wishes she had taken her case against the church and the pastor to trial in order to hold them accountable rather than to recover damages ("it wasn't about the money'), but it is questionable whether this constitutes an adequate basis to have sued the Zerillo defendants.

Nevertheless, the court will not impose Rule 11 sanctions for several reasons. First and foremost, the decision by Justice Mills demonstrates that Hope Champagne is a sympathetic figure who was significantly damaged by the conduct of Charles Knox – conduct that Pastor Reynolds apparently attempted to defend at the trial before Justice Mills – and the court sees no evidence that she was not sincere, even if misguided, in pursuing this case. Second, plaintiff's present counsel took over the case in midstream, cannot be faulted to any failures by predecessor

12

counsel, and essentially had to play the hand that he was dealt. Finally, although the court does not minimize the inadequacies of plaintiff's summary judgment submissions, plaintiff's current counsel is not, as far as the court is aware, someone who is well-acquainted with summary judgment practice and who therefore would have had reason to know better.

The entry shall be:

1. The motion for summary judgment filed by defendants Tim Zerillo, Zerillo Law LLC, and John Burke is granted, and the complaint is dismissed.

2. Because defendants' motion for summary judgment is granted, defendants' motion to exclude the testimony of plaintiff's expert witness is moot.

3. Defendants' motion for Rule 11 sanctions is denied.

4. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: January __7__, 2021

Thomas D. Warren
Justice, Superior Court

Entered on the Docket: 01/08/21
Mc

Plaintiff-Peter Evans, Esq.
Defendants-Russell Pierce, Esq.

13