**Norman BURTON**

v.

**Lawrence MERRILL.**

Supreme Judicial Court of Maine.

Argued Nov. 13, 1991.
Decided Aug. 24, 1992.

James E. Mitchell (orally), Jim Mitchell and Jed Davis, P.A., Augusta, for plaintiff.

Vernon I. Arey (orally), Wheeler & Arey, Waterville, for defendant.

Before McKUSICK, C.J.,* and WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

Defendant Lawrence Merrill, an attorney, appeals from a judgment of the Superior Court (Penobscot County, *Smith, J.*)

following a jury trial. The jury found Merrill liable to plaintiff Norman Burton for professional negligence, and by a general verdict awarded Burton damages of $50,-376. Merrill contends that the evidence presented at trial was insufficient to support the jury's conclusion that he committed legal malpractice and was also insufficient to support any award of damages to the plaintiff. Merrill further argues that the court erred in its instructions to the jury and by failing to direct a verdict in his favor on Burton's claim for emotional distress. We find no error and affirm the judgment. Accordingly, we do not reach the issues raised in Burton's cross-appeal.

The facts giving rise to this malpractice action occurred in the late 1970's and early 1980's. In June 1978, Burton, a building contractor, was hired by Joan Treadwell to do some work on the third floor of a residential building in the City of Bangor. Burton and Treadwell eventually decided to pool their resources and operate the building as a rooming house. They were married in 1980. On several occasions, Burton consulted with Basil Eaton, the City's code enforcement officer, regarding the requirements for converting the premises into a rooming house to accommodate eight tenants. Eaton issued a certificate of occupancy for two roomers until the appropriate renovations to convert the building had been completed. Eaton also assisted Burton in the application for an innkeeper's license for five persons, and additional building permits were obtained on behalf of Treadwell, who continued to own the building, to convert the premises into a rooming house. Burton invested substantial labor and materials in the building.

In May 1980, City inspectors viewed the premises and Burton paid the necessary fee for an occupancy permit for eight roomers. A few weeks later, however, the fee was returned by the new code enforcement officer, Albert Smith, who had replaced Eaton. Smith construed the zoning ordinances to prohibit the use of the property as a room-

* McKusick, C.J. sat at oral argument and participated in the initial conference but retired before this opinion was adopted.

ing house in the zone in which it was located. The Burtons' requests for a change in the zoning and for a variance to allow the rooming house to be operated were denied.[1]

In 1981, the City issued notices of code violations to the Burtons and informed them that the City was planning court action for abatement of the continued operation of the premises as a rooming house and for specific code violations. Burton claims that he was being harassed by City officials by what he deemed to be constant unwarranted inspections. Because of the harassment and because they could not run the rooming house as a business, the Burtons decided that they should sell the property. They retained Lawrence Merrill as legal counsel on June 10, 1981, according to Burton, for the purpose of suing the City to stop the harassment.[2] The City filed a complaint against the Burtons on July 31, 1981, seeking injunctive relief and civil penalties for the unlawful operation of the premises as a rooming house.

Merrill filed an answer to the City's complaint against the Burtons on August 21, 1981.[3] Although Merrill assured the Burtons that he had filed a counterclaim, he in fact did nothing further on the case except to draft additional affirmative defenses and a counterclaim, pleadings that were never filed. The Burtons had the house on the market and lowered the price a number of times in the hope of finding a buyer. Merrill continued to tell the Burtons that a counterclaim had been filed and that their suit against the City would more than make up for any loss on the sale of the

house. Because of defaults on the mortgage payments and the inability to sell the renovated property, the house was eventually turned over to the bank.

On December 5, 1983, following the turn over of the property to the bank, the City agreed to dismiss the case, and Merrill signed a stipulation of dismissal without having first consulted the Burtons. Burton did not discover that Merrill had not filed the counterclaim against the City until June 1984, when it came up in a matter brought by Burton before the Fee Arbitration Panel of the Board of Overseers of the Bar. In August 1986, Burton filed a complaint in the Superior Court against Merrill[4] claiming that Merrill's failure to aggressively defend the lawsuit and file the counterclaim resulted in damage to his reputation, loss of the house as a business opportunity, damage to his physical and mental well-being, and adversely affected his marriage; a marriage that ended in divorce. Burton also alleges a loss of investment of time and materials in the house due to Merrill's failure to press the estoppel defense early on and the failure to file the counterclaim.

A jury trial was held in July 1990. The trial court dismissed Burton's claims of breach of contract and loss of consortium and later directed a verdict in favor of Merrill on Burton's claim that the defendant was negligent in failing to file the counterclaim. The case was submitted to the jury solely on Burton's claim that Merrill committed malpractice by failing to properly defend the City of Bangor suit. The jury returned a verdict against Merrill,

---

1. No appeals were taken from the City's refusal to change the zoning ordinance or from the denial of the variance. *See infra* Section II.

2. Merrill disputes that he was originally retained to sue the City. He contends that he was hired to work on a real estate problem and did not learn of any problems with the City until later.

3. The answer contained two affirmative defenses, both premised on the notion that the City should be estopped because of its prior conduct in issuing the permits, licenses, and a certificate of occupancy for the roomers.

4. Norman Burton filed a complaint against Lawrence Merrill, Richard Relyea, Peter Adams

Anderson, and Gary Norton, all members of the same Bangor law firm. The complaint alleged professional malpractice on the part of Relyea for the handling of a workers' compensation action on behalf of Burton. The complaint also alleged that Merrill committed malpractice in his handling of the lawsuit brought by the City of Bangor against Burton. Burton sought to hold the remaining defendants, Anderson and Norton, liable under a theory of partnership liability. The trial court severed the actions for purposes of trial. The *Burton v. Relyea* matter had not yet gone to trial at the time of this appeal.

awarding damages to Burton in the amount of $50,367, on a general verdict form that did not allocate between various elements of Burton's damage claims. Merrill's motion for judgment notwithstanding the verdict or new trial was denied and timely notices of appeal and cross-appeal were filed.[5]

## I.

Merrill contends on appeal that the evidence presented at trial was insufficient to establish the elements of professional negligence, particularly causation and damages, arising from Merrill's failure to properly defend Burton in the suit against him by the City of Bangor.

■ Attorneys are under a legal obligation to discharge their duties and execute the business entrusted to them with a reasonable degree of care, skill, and dispatch, and if a client is injured by the fault or negligence of the attorney, the attorney is liable. *Sohn v. Bernstein,* 279 A.2d 529, 532 (Me.1971). A jury's verdict finding an attorney liable for professional negligence must be upheld if any credible evidence, and all justifiable inferences drawn from that evidence, viewed in the light most favorable to the plaintiff, supports the verdict. *Jourdain v. Dineen,* 527 A.2d 1304, 1306 (Me.1987).

■ Between August 24, 1981, the date the answer was filed, and December 5, 1983, the date the City dismissed its complaint, except for the preparation of additional affirmative defenses and a counterclaim that were never filed, Merrill did nothing in defense of the case, a case that a jury could conclude had a valid affirmative defense based on estoppel. Burton presented expert evidence that the estoppel defense was applicable and should have been vigorously asserted.[6] The jury could have concluded that had Merrill acted with reasonable care, skill, and dispatch, the City's suit could have been resolved in Burton's favor at a much earlier date and that the City could have been prevented, under estoppel principles, from enforcing its zoning ordinances to prevent the property from being operated as a rooming house. *See City of Auburn v. Desgrosseilliers,* 578 A.2d 712, 715 (Me.1990).

■ Burton's evidence as to damages showed that he had a substantial investment in the building ($20,000 in material, $10,000 in labor), and that his investment was lost when the property could not be operated as a rooming house. The value of the renovated property diminished and it became difficult to sell. The property was ultimately turned over to the bank. In addition, in support of his claim of severe emotional distress, Burton presented evidence, albeit most of it in the form of his own testimony, that the City harassed him as the operator of the building during the pendency of the lawsuit, that his reputation as a contractor suffered during that period because of the dispute with the City, that he developed ulcers, and that his marriage to Joan Treadwell deteriorated. Although Burton's evidence as to damages was contradicted at trial, and could have been rejected by the jury, on appeal we view that evidence in a light most favorable to Burton, and are required to uphold the verdict in his favor unless it cannot be sustained by any reasonable view of the evidence. *Miller v. Szelenyi,* 546 A.2d 1013, 1019 (Me.1988); *Salley v. Childs,* 541 A.2d 1297, 1300 (Me.1988); *Bourette v. Dresser Indus., Inc.,* 481 A.2d 170, 174 (Me.1984).

---

**5.** Because the judgment against Merrill did not reflect any final judgment against Relyea, Anderson, or Norton, this court remanded for entry of an order pursuant to M.R.Civ.P. 54(b). *See Cole v. Peterson Realty, Inc.,* 432 A.2d 752, 755–57 (Me.1981). Such an order was entered by the Superior Court and the parties refiled their notices of appeal and cross-appeal.

**6.** Burton's estoppel theory was based on the continuous approval by the City's code enforcement officer of the plans for expanding the building for purposes of converting to a rooming house and the issuance of permits for that purpose, and Burton's reliance on those actions by investing labor and material into altering and improving the building. Subsequently, when a new code enforcement officer was hired, the City prevented the use of the building for the purpose for which the renovations were made. *See City of Auburn v. Desgrosseilliers,* 578 A.2d 712, 714–15 (Me.1990).

The record contains sufficient evidence to support the verdict and damage award.

## II.

■ Merrill also contends that the court erroneously refused his request that the jury be instructed on the issue of comparative fault and on nominal damages. *See* 14 M.R.S.A. § 156 (1980). The basis of Merrill's comparative fault contention is that by failing to challenge or appeal [7] the City's refusal to change the zoning and its denial of a variance to allow the operation of an eight-tenant rooming house, Burton lost an opportunity he had, even before retaining Merrill's services, to contest and resolve the subject matter of the complaint against him.

A party does not have a right to a requested instruction unless it states the law correctly, is supported by the evidence in the case, and is not misleading, confusing, or already covered by the charge actually given. *Pelkey v. Canadian Pac. Ltd.*, 586 A.2d 1248, 1251 (Me.1991). The trial court's refusal to instruct on comparative fault was based on its determination that such an instruction would confuse the jury with matters relating back before Merrill was retained by Burton, the speculative chances of success of such a challenge or appeal, and because the instruction actually given made clear that the jury could award damages only for Merrill's conduct that actually caused harm to Burton. There was no error in the court's refusal to instruct the jury on comparative fault.

Nor was it error for the court to refuse Merrill's requested instruction on nominal damages. The court's instructions on damages sufficiently informed the jury on the law of damages, and made clear that Burton could be awarded damages only if the jury found Merrill's conduct harmed Burton, and then only to the extent that Burton was harmed. *See Pelkey*, 586 A.2d at 1251.

Because we affirm the judgment in Burton's favor, we need not address the contentions raised by Burton in his cross-appeal.

The entry is:

Judgment affirmed.

All concurring.

**7.** *See* 14 M.R.S.A. §§ 5951–5963 (1980); 30–A M.R.S.A. § 2691(3)(G) (Pamph.1991); M.R.Civ.P. 80B.