2009 ME 86

**Paul F. GARLAND et al.**

v.

**Peter R. ROY et al.**

Supreme Judicial Court of Maine.

Argued: May 19, 2009.
Decided: Aug. 6, 2009.

---

Arthur J. Greif, Esq. (orally), Julie D. Farr, Esq., Gilbert & Greif, P.A., Bangor, ME, for Angeline and Paul Garland.

James M. Bowie, Esq. (orally), Thompson & Bowie, LLP, Portland, ME, for Peter R. Roy and Roy, Beardsley, Williams & Granger, LLC.

Panel: CLIFFORD, ALEXANDER, LEVY, and GORMAN, JJ.

CLIFFORD, J.

[¶ 1] Paul F. and Angeline A. Garland appeal from a judgment entered in the Superior Court (Hancock County, *Cuddy, J.*) following a jury verdict on their claim for professional negligence against attorney Peter R. Roy and the law firm of Roy, Beardsley, Williams & Granger, LLC (collectively, Roy). The Garlands contend, inter alia, that the court erred by entering a judgment as a matter of law against them on their claim for the value of their lost property. Roy cross-appeals, contending that there was insufficient evidence of any legal malpractice, and that emotional distress damages were improperly entered in favor of Paul Garland. We disagree with Roy that the evidence does not support a finding of legal malpractice. We agree with Roy, however, that emotional distress damages were improperly entered, and we vacate that part of the judgment awarding emotional distress damages to Paul. We agree with the Garlands that the court erred when it granted Roy's motion for judgment as a matter of law on the Garlands' claim for the value of the lost property, and we vacate and remand to the Superior Court to reinstate the jury's award as to the value of the lost property in favor of both Paul and Angeline.

## I. BACKGROUND

[¶ 2] This matter involves the legal representation of the Garlands by Roy in a land dispute between the Garlands and their abutter, Robert Millot, and the Garlands' subsequent action against Roy for legal malpractice in connection with that

representation. Viewing the evidence in the light most favorable to the Garlands, *see Sullivan v. Porter*, 2004 ME 134, ¶ 12, 861 A.2d 625, 631, a jury could have rationally found the following facts.

[¶ 3] In October of 1971, the Garlands purchased from Helen Vennen a shore front parcel of land on Green Lake in Ellsworth (the Vennen lot), which abutted land the Garlands already owned. Included within the Vennen lot is the land over which this dispute arose, a half-acre parcel with approximately 115 feet of shore frontage, upon which a small, red camp sits.

[¶ 4] Within weeks of purchasing the Vennen lot, Paul measured the boundary line of the land. During the summer of 1972, the Garlands began making ongoing improvements to the property, and Paul put a cable around the property's boundary with a sign that read "no trespassing" and "property of Paul Garland."

[¶ 5] The red camp was built in the late 1950s by George Anderson, who at the time owned another parcel of land abutting the Vennen lot. Anderson believed that he owned the land on which he built the camp. The City first taxed the camp as a building in 1958. The Garland children began using the camp in 1969, prior to the Garlands' purchase of the Vennen lot, and continued using the camp for several years thereafter. By the late 1960s, the Garlands no longer saw Anderson on the Vennen lot, and Anderson's personal possessions had been removed from the camp by the summer of 1972. Anderson sold his property to John Bridges in 1974.

[¶ 6] In 1975, the Garlands had a survey conducted, which confirmed that the red camp was on their land. At that time, Paul offered to help Bridges move the camp over to Bridges's property. Shortly thereafter, the Garlands no longer saw Bridges on his property. Paul wrote a letter to Bridges in 1978 about moving the camp, to which Bridges responded that he had sold the property. Assuming that the camp had been abandoned, Paul began making extensive improvements to the camp, including jacking it up, redoing the porch, putting in a window and stove, and reshingling the roof. Bridges sold the property to Millot in 1977.

[¶ 7] Millot filed a lawsuit against the Garlands in the District Court (Ellsworth, *Romei, J.*), seeking a declaratory judgment establishing the boundary between the parties' parcels of land. Roy was the attorney who represented the Garlands in that case. The court entered a judgment against the Garlands, determining that Millot was the owner of the disputed land. The basis for the court's decision, however, was unclear. The Garlands appealed the decision to the Superior Court (Hancock County.). The Superior Court (*Marsano, J.*) concluded that although the Garlands had the better record title, the District Court apparently granted Millot title based on a claim of adverse possession, which was never pleaded by Millot or advanced in detail at trial. The Superior Court affirmed the District Court judgment, but permitted the Garlands to request a retrial in order to fully litigate the issue of adverse possession, which the Garlands did. The Superior Court then remanded the case to the District Court.

[¶ 8] Roy wrote a letter to the Garlands informing them that the Superior Court judge told him that "based upon the evidence on the record, ... Millot had excellent evidence on [a]dverse [p]ossession." After the case was remanded to the District Court, Roy, without the Garlands' input or approval, waived a hearing on retrial, and agreed to allow the District Court to reconsider its judgment based on the record from the original proceeding. The District Court found that Millot "owned all of the land in the disputed area by adverse possession." The Garlands ap-

pealed the District Court's decision to this Court, and we upheld the judgment in Millot's favor. *Millot v. Garland,* Mem–02–33 (Mar. 11, 2002).

[¶ 9] The Garlands then filed this case against Roy in the Superior Court, alleging that Roy committed professional malpractice in his representation of the Garlands in the land dispute case brought against them by Millot. The Garlands alleged that as a result of the malpractice, they lost the value of the property that was in dispute, and suffered emotional distress. At the malpractice trial, the Garlands' expert, Attorney Frank Chowdry, testified that Roy committed malpractice in the land dispute case by not insisting upon a retrial on remand, and by not having the Garlands' children, whom Paul had identified to Roy as people with knowledge of the Garlands' use of the disputed property, testify in order to contradict Millot's adverse possession claim. Chowdry testified that in his opinion, sufficient evidence was available that, had it been presented at a retrial, would have defeated each element of Millot's adverse possession claim, and that Roy had knowledge of such evidence based on his conversations with Paul[1] and the dates from the various deeds. Roy admitted that dates are critical for an adverse possession claim, and agreed that it is important to get your client "focused on dates" in such cases. Roy testified, however, that although he knew prior to the original trial that Paul was mistaken about two critical dates, he did not bring these mistakes to Paul's attention.

[¶ 10] The Garlands and their children testified that the loss of the land was emotional for both Paul and Angeline, and "devastated" Paul. Paul described the loss as "one of the greatest losses that we've ever experienced."

[¶ 11] Over Roy's objection, Angeline testified that she thought the value of the lost property was $200,000. The Garlands paid less than $10,000 for the entire Vennen lot in 1971, and never marketed the land or looked into its value. Paul had no opinion as to the value of the lost property, and no other evidence as to the value was admitted at trial.[2]

[¶ 12] At the close of the Garlands' case, *see* M.R. Civ. P. 50(a), and again at the close of all of the evidence, *see* M.R. Civ. P. 50(b), Roy moved for a judgment as a matter of law, arguing that the evidence was insufficient to establish that he breached the standard of care of an attorney, or that the Garlands could have defeated Millot's adverse possession claim. Roy also moved for a judgment as a matter of law on the issue of the value of the land, arguing that Angeline's testimony as to the land's value lacked a sufficient foundation. The court reserved its decision on both motions.

[¶ 13] Roy's defense was based in part on his contention that, at the malpractice trial, the Garlands presented new evidence of their use of the property during the early to mid 1970s, evidence Roy asserted he did not know about at the time the Garlands were being sued by Millot. Roy presented evidence of Paul's testimony at the original trial, and in Paul's deposition from that trial, that the Garlands first occupied the disputed property in 1978; that Paul first announced that he owned the camp at least twenty years after it was

---

1. For example, Roy sent a letter to Millot's attorney in 1992 in which Roy stated that it appears that the Garlands "most strenuously exercised dominion over that property for a period of at least 20 years," which included "demands that Mr. Bridges move his property, ... the erection and maintenance of lines,

cables, and no trespassing signs, as well as subsequent improvements to the camp, when it became apparent that the earlier owner had abandoned the same."

2. *See infra* note 5.

built; and that Paul told Roy that the camp was being used regularly by Anderson and then by Bridges until 1977.[3] Roy contended that no one in the Garland family informed him that the Garlands had occupied the property, including the camp, prior to 1978, and that the Garlands did not correct Roy's understanding, as stated in a letter to Paul, that Bridges and Anderson utilized the property in an open and notorious fashion from 1958 through 1978. Roy testified that in his professional judgment, based on his knowledge at the time, the Garlands were more likely to succeed after the case was remanded to the District Court by arguing on the existing record that Millot did not meet his burden of proving adverse possession, which Roy believed Millot could easily have proved if there was a full retrial on remand and Millot presented additional evidence.

[¶ 14] At the close of the Garlands' case, the court granted a motion for a judgment as a matter of law on Angeline's claim for emotional distress, but allowed Paul's emotional distress claim to go to the jury. The jury found that Roy committed professional negligence and awarded damages in the amount of $100,000 each to Paul and Angeline for the value of the lost property, and $250,000 in emotional distress damages to Paul.

[¶ 15] Following the verdict, the court denied Roy's earlier motion for a judgment as a matter of law on the professional negligence claim, but ruled in favor of Roy as to the value of the lost property, concluding that Angeline's opinion testimony as to the value was speculative and "did not constitute the ... appropriate evidence ... of value." The court set aside the

verdict as to the awards to both Paul and Angeline for the value of the lost property, and entered judgment in favor of Paul on his emotional distress claim.

[¶ 16] Both parties filed post-judgment motions. The Garlands moved to alter or amend the judgment, see M.R. Civ. P. 59(e), requesting, inter alia, that the court recognize Angeline as a prevailing party for purposes of recovering her costs pursuant to M.R. Civ. P. 54(d), and to enter judgment in her favor for zero damages. Roy moved for a judgment as a matter of law, arguing, inter alia, that emotional distress damages are inappropriate in this legal malpractice action. The court denied both parties' post-judgment motions and entered a judgment in favor of Paul in the amount of $250,000, and against Angeline on all of her claims. The Garlands filed this appeal, and Roy his cross-appeal.

## II. DISCUSSION

[¶ 17] We review de novo rulings on motions for judgment as a matter of law and judgment notwithstanding the verdict. *Madore v. Kennebec Heights Country Club*, 2007 ME 92, ¶ 5, 926 A.2d 1180, 1183.

> Judgment as a matter of law, either at the close of evidence or post-judgment, is appropriate when, viewing the evidence and all reasonable inferences therefrom most favorably to the party opposing the motion, a jury could not reasonably find for that party on an issue that under the substantive law is an essential element of the claim.

*Id.* (quotation marks omitted).

### A. Legal Malpractice Claim

[¶ 18] Roy argues that the evidence was insufficient to support a finding of legal malpractice.[4] "A jury's verdict

---

3. The court ruled against Roy's objection to the admission of any testimony from the Garlands and their children that contradicted Paul's testimony from the original trial and deposition. *See infra* note 4.

4. Roy also contends that the trial court erred by allowing Paul to testify inconsistently with his earlier trial testimony and deposition. We have held that, in a summary judgment context, a witness who has given clear answers to

finding an attorney liable for professional negligence must be upheld if any credible evidence, and all justifiable inferences drawn from that evidence, viewed in the light most favorable to the plaintiff, supports the verdict." *Burton v. Merrill*, 612 A.2d 862, 865 (Me.1992).

[¶ 19] "Attorneys are under a legal obligation to discharge their duties and execute the business entrusted to them with a reasonable degree of care, skill, and dispatch, and if a client is injured by the fault or negligence of the attorney, the attorney is liable." *Id.* To prove attorney malpractice, a plaintiff must prove by a preponderance of the evidence that the defendant breached a "duty owed to the plaintiff to conform to a certain standard of conduct," and that "the breach of that duty proximately caused an injury or loss to the plaintiff." *Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 10, 742 A.2d 933, 938–39; *see also Johnson v. Carleton*, 2001 ME 12, ¶ 14, 765 A.2d 571, 575 (stating that in a legal malpractice action, "a plaintiff must demonstrate that he or she would have achieved a more favorable result but for the defendant's alleged legal malpractice") (quotation marks omitted); *Fleming v. Gardner*, 658 A.2d 1074, 1077 (Me.1995).

[¶ 20] In viewing the evidence in the light most favorable to the Garlands, a jury could have found that Roy breached the duty of care he owed to the Garlands, that the breach proximately caused injury to the Garlands, and that the Garlands would have received a more favorable outcome in the original trial but for Roy's negligence. *See Johnson*, 2001 ME 12, ¶ 14, 765 A.2d at 575; *see also Corey*, 1999 ME 196, ¶ 10, 742 A.2d at 938–39. Although Roy testified that he believed that Millot could not prevail on his adverse possession claim on the record from the original trial, a jury could have found that Roy should have used due diligence to determine whether and to what extent the Garlands could challenge the adverse possession claim before deciding to not have an evidentiary hearing in the District Court on remand. The evidence is conflicting, but when viewed most favorably to the Garlands, it is sufficient to support a finding that, prior to deciding not to retry the adverse possession issue, Roy had some knowledge of and could have presented evidence that the Garlands had used the disputed property in such a way as to defeat Millot's claim. Moreover, the dates from the relevant deeds, of which Roy had copies at the time of the original trial, when considered together with the timing of certain events as communicated by the Garlands to Roy, also support a finding that the Garlands could have prevailed on Millot's adverse possession claim. Because specific dates are very important in an adverse possession case, the evidence supports a finding that Roy should have taken steps to clarify with the Garlands the exact dates that were relevant to the adverse possession issue, and that Roy should have consulted with the Garlands before deciding to not retry and present evidence on the adverse possession issue. There was no error in the court's denial of

---

unambiguous questions cannot later create a conflict and resist summary judgment by contradicting his prior testimony without a legitimate explanation as to why he changed his testimony. *Zip Lube, Inc. v. Coastal Sav. Bank*, 1998 ME 81, ¶ 10, 709 A.2d 733, 735. Here, however, although there are discrepancies between Paul's earlier testimony and later testimony, the changes in Paul's later testimony do not amount to a direct contradiction of his earlier testimony, and can be understood to reflect mere confusion on Paul's part. Moreover, Roy was permitted to impeach Paul on the discrepancies that did exist between the earlier and later testimony. The court did not err by denying Roy's motion to prohibit Paul from offering the challenged testimony.

Roy's motion for judgment as a matter of law on the issue of liability.

### B. Value of the Lost Property

 [¶ 21] The Garlands contend that the court erred by granting Roy's motion for judgment as a matter of law on the Garlands' claim for the value of the lost property because "ownership of property alone provides a sufficient foundation for an opinion of the value of real estate," and Angeline's testimony therefore provided a sufficient basis for the jury's award of damages. "Property owners, by reason of their ownership alone, may state their opinion as to the fair market value of their property." *Ferrell v. Cox,* 617 A.2d 1003, 1007 (Me.1992) (quotation marks omitted); *see also Landry v. Landry,* 1997 ME 173, ¶ 8, 697 A.2d 843, 845–46. We have upheld an award of damages for real property based solely on the owner's opinion of value. *See Ferrell,* 617 A.2d at 1007 (Me. 1992) (upholding an award of damages where there was no evidence conclusively contradicting the owner's opinion as to the decrease in the value of his property); *see also Glidden v. Belden,* 684 A.2d 1306, 1320 (Me.1996); *Titcomb v. Saco Mobile Home Sales, Inc.,* 544 A.2d 754, 758 (Me. 1988) (stating that a wronged party need not prove damages to a "mathematical certainty").

[¶ 22] We agree with the Garlands that the court erred by concluding that Angeline's opinion as to the value of the lost property was so speculative that a judgment as a matter of law for Roy on the issue had to be entered. Although Angeline provided limited testimony as to the basis of her opinion of the value of the lost property, her testimony was admissible, and the lack of a more substantial basis to support her opinion goes to the weight of the evidence. *See Currier v. Toys 'R' Us, Inc.,* 680 A.2d 453, 455 (Me.1996) (stating that it is the jury's role to weigh the evidence and determine witness credibility). Moreover, although Roy elicited testimony from Angeline that the Garlands paid less than $10,000 for the entire Vennen lot in 1971, and that the Garlands never attempted to sell or market the land, Roy did not offer any evidence "conclusively contradicting" Angeline's testimony that the disputed property was worth $200,000 at the time the Garlands lost it in 2002. *See Ferrell,* 617 A.2d at 1007. The evidence of the land's value, expressed in Angeline's opinion testimony, is sufficient to support the jury's award of damages, *see id.,* an award that should be reinstated on remands.[5]

### C. Emotional Distress Damages

[¶ 23] Roy contends that emotional distress damages are not generally recoverable in legal malpractice actions such as this one, in which the Garlands allege a loss only to economic interests. The Garlands contend that their claim is not based solely on an economic loss because the land, which is unique, and which they intended to leave to their children, "was worth infinitely more than its dollar amount to them."

[¶ 24] We have held that "a plaintiff may recover damages for severe emotional distress arising out of a legal malpractice action." *McAlister v. Slosberg,* 658 A.2d 658, 660 (Me.1995); *see also Burton,* 612 A.2d at 865–66; *Salley v. Childs,* 541 A.2d 1297, 1300–01 (Me.1988). In all legal malpractice cases where we have approved the

---

**5.** The Garlands appeal the exclusion by the trial court of the testimony of their valuation expert, Marc Perry, an associate real estate broker, whose opinion was that the value of the Garlands' lost property was $175,000. The court excluded Perry's testimony pursuant to 32 M.R.S. § 14003 (2008) because he is not a licensed real estate appraiser. Because Angeline's testimony that the lost property is worth $200,000 is sufficient to uphold the jury's award, we do not address the issue of the admissibility of Perry's testimony.

recovery of damages for severe emotional distress, however, the actions involved, in addition to economic loss, egregious actions on the part of the defendant attorney, *McAlister*, 658 A.2d at 660; *Burton*, 612 A.2d at 864, 865; harm to the plaintiff's reputation, *Burton*, 612 A.2d at 865; *Salley*, 541 A.2d at 1300–01; or other personal losses, such as the deterioration of the plaintiff's marriage, *Burton*, 612 A.2d at 865. We have never allowed the recovery of emotional distress damages in legal malpractice actions that involve only an economic loss and no egregious conduct by the attorney.

■ [¶ 25] The Garlands contend that the loss of the land was more than just an economic loss to them, but their loss in this case is not analogous to the personal losses for which plaintiffs have previously recovered. Although land is unique for many purposes, *see, e.g., Sullivan*, 2004 ME 134, ¶ 25, 861 A.2d at 633, an ownership interest in land is economic, not personal, *see Maere v. Churchill*, 116 Ill.App.3d 939, 72 Ill.Dec. 441, 452 N.E.2d 694, 697–98 (1983).

■ [¶ 26] Because the Garlands' loss was purely economic, and Roy did not act egregiously, emotional distress damages are not recoverable in this legal malpractice action. By reaching this conclusion, we are in accord with the general rule of most jurisdictions that emotional distress damages are not recoverable in legal malpractice cases when the only injury is economic, except in situations where the tort was intentional, *see, e.g., Timms v. Rosenblum*, 713 F.Supp. 948, 954–55 (E.D.Va. 1989), *aff'd*, 900 F.2d 256 (4th Cir.1990); Restatement (Third) of the Law Governing

Lawyers § 53 cmt. g (2000), and/or when the attorney has been untruthful with his clients or has wantonly or willfully disregarded the consequences of his or her actions, *see, e.g., Timms*, 713 F.Supp. at 954–55; *Thornton v. Squyres*, 317 Ark. 374, 877 S.W.2d 921, 923 (1994); *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.*, 556 N.W.2d 557, 561–62 (Minn.1996); *Akutagawa v. Laflin, Pick & Heer, P.A.*, 138 N.M. 774, 126 P.3d 1138, 1143–44 (Ct. App.2005). This rule is based on the unforeseeability of emotional distress damages flowing from an economic loss. *See* Restatement (Third) of the Law Governing Lawyers 53 § cmt. g (2000); *see also Lawrence v. Grinde*, 534 N.W.2d 414, 422 (Iowa 1995) (stating that "only in special cases involving peculiarly personal subject matters do the majority of jurisdictions recognize that mental anguish may be a foreseeable damage resulting from attorney negligence") (quotation marks omitted). Our case law has consistently held that emotional distress damages should be limited when emotional harm is unforeseeable. *See, e.g., McAfee v. Wright*, 651 A.2d 371, 373 (Me.1994); *Rubin v. Matthews Int'l Corp.*, 503 A.2d 694, 696 (Me.1986) (holding that, as a general rule, emotional distress damages as a result of a breach of contract are not recoverable in the absence of physical injury).

[¶ 27] Because the Garlands suffered only an economic loss as a result of Roy's negligence, and Roy did not act egregiously, the Garlands are not entitled to emotional distress damages, and Roy was entitled to a judgment as a matter of law on the claim for emotional distress damages.[6]

---

6. Roy also contends that the court erred by denying his motion for judgment as a matter of law and motion for a new trial on Paul's emotional distress claim because: (1) emotional distress damages cannot stand where there is no legally cognizable underlying damage award, (2) the emotional distress damages were based on an improper formula, (3) the emotional distress damages were based on a property damage award set aside by the court, (4) the emotional distress damages are excessive, and (5) there was insufficient evidence to support an award of emotional distress damages to Paul. The Garlands contend that the court erred by granting Roy's motion

D. Whether Angeline is a Prevailing Party

[¶ 28] The Garlands also contend that the court erred by denying their motion to alter or amend the judgment to enter judgment in Angeline's favor and award her costs pursuant to M.R. Civ. P. 54(d), which provides that "[c]osts shall be allowed as of course to the prevailing party...." The court's ruling on the Garlands' motion, however, was based on its conclusion that the Garlands did not prove the value of the lost property, which, because Angeline suffered no other injury, caused her legal malpractice claim to fail as a matter of law, and Angeline was therefore not a prevailing party pursuant to M.R. Civ. P. 54(d). *See Landis v. Hannaford Bros. Co.*, 2000 ME 111, ¶ 7, 754 A.2d 958, 959–60 (stating that the determination of who is the prevailing party pursuant to Rule 54(d) is "based upon success upon the merits") (quotation marks omitted). Because we vacate the court's ruling on Roy's motion for judgment as a matter of law and reinstate the jury verdict for the value of the lost property, Angeline has proven all of the elements of her legal malpractice claim, including injury, *see Niehoff v. Shankman & Assocs. Legal Ctr., P.A.*, 2000 ME 214, ¶ 7, 763 A.2d 121, 124, and is therefore a prevailing party, to whom costs should be awarded pursuant to M.R. Civ. P. 54(d).

The entry is:

Judgment affirmed in part and vacated in part. Remanded to the Superior Court for further proceedings consistent with this opinion. Pursuant to M.R.App. P.

13(a), no costs on appeal are awarded to either party.

for judgment as a matter of law on Angeline's claim for emotional distress damages. Because emotional distress damages are not recoverable in legal malpractice cases involving solely an economic loss and no egregious conduct on the part of the attorney, we need not address these additional contentions.