STATE OF MAINE
CUMBERLAND, SS.

BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
DOCKET NO. BCD-CV-16-11

PINE RIDGE REALTY CORPORATION, )
)
Plaintiff, )
)
v. )
)
DOMINATOR GOLF, LLC, and )
DOMENIC PUGLIARES, )
)
Defendants. )
)

**ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

Defendants Dominator Golf, LLC and Domenic Pugliares (collectively "Dominator Golf") move for summary judgment on Plaintiff Pine Ridge Realty Corporation's ("Pine Ridge") claim for breach of contract. For the reasons discussed below, Dominator Golf's motion for summary judgment is denied.

## I.    BACKGROUND

A number of years ago, Ronald and Barbara Boutet purchased the Dunegrass golf course and surrounding land in Old Orchard Beach, Maine. (B. Boutet Aff. ¶¶ 1, 4.) The Boutets operated the golf course and sought to develop the surrounding property. (*Id.* ¶¶ 4, 6.) At some point, the golf course and surrounding property in the Dunegrass development was transferred to Pine Ridge, which was controlled by the Boutets. Mr. Boutet passed away in 2015. (B. Boutet Aff. ¶ 5; Defs. Supp'g S.M.F. ¶ 18.) Ms. Boutet is the president and sole remaining shareholder of Pine Ridge and its affiliated entities. (B. Boutet Aff. ¶ 1.)

Dominator Golf purchased the Dunegrass golf course from Pine Ridge on March 11, 2009. (Defs. Supp'g S.M.F. ¶ 1; Pl. Opp. S.M.F. ¶ 1.) Prior to closing, the parties executed a Purchase and Sale Agreement. (*Id.* ¶ 2.) Domenic Pulgiares signed the Purchase and Sale

1

Agreement on behalf of Dominator Golf, at that time a limited liability company to be formed. (Defs. Supp'g S.M.F. ¶ 3.) The Purchase and Sale Agreement contained § 23, which provided in relevant part:

> Buyers agree that they will keep and maintain the golf course property in substantially the same or better condition as heretofore kept and maintained by Seller, …

(Defs. Supp'g S.M.F. ¶ 4; Pl. Opp. S.M.F. ¶ 4.) Dominator Golf leased the golf course to Dunegrass Golf, LLC from November 1, 2011, until October 31, 2016. (*Id.* ¶ 5.)

Pine Ridge continued to own other sections of the Dunegrass development approved for residential development. (*Id.* ¶ 7.) Pine Ridge has conveyed numerous lots in the Dunegrass development since 2009. (Defs. Supp'g S.M.F. ¶¶ 32-43.) In addition to other conveyances, on August 1, 2011, Pine Ridge conveyed twenty-two lots in "section B" of the Dunegrass development to Section B, LLC. (Defs. Supp'g S.M.F. ¶ 44; Pl. Opp. S.M.F. ¶ 44.) Under the purchase and sale agreement with Section B, Pine Ridge receives $50,000 for each lot sold by Section B. (*Id.* ¶ 45.) In 2012, Pine Ridge conveyed thirty lots in "section A" of the Dunegrass development to Steven Boutet, who in turn conveyed the subdivision to LaCosta Development, LLC. (*Id.* ¶ 54.) At her deposition, Ms. Boutet testified that Pine Ridge receives money from LaCosta Development. (Defs. Supp'g S.M.F. ¶ 55.)

Since 2014, Pine Ridge, Dominator Golf, and the Town of Old Orchard Beach have been involved in several legal actions regarding the Dunegrass development. Pine Ridge initiated this action on March 16, 2015. Pine Ridge filed a one-count complaint against Dominator Golf alleging that Dominator Golf had breached § 23 of the Purchase and Sale Agreement. Dominator Golf filed an answer and counterclaim for declaratory judgment on April 27, 2015.

2

Dominator Golf moved for summary judgment on Pine Ridge's complaint for breach of contract on November 3, 2016. Pine Ridge filed its opposition on December 5, 2016. Dominator filed a reply on December 12, 2016. Oral argument was held on January 4, 2017.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. A fact is material if it can affect the outcome of the case. *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (internal citation and quotation marks omitted). A genuine issue of material fact exists if the fact finder must choose between competing versions of the truth. *Id.* When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

If the moving party's motion for summary judgment is properly supported, the burden shifts to the non-moving party to respond with specific facts establishing a prima facie case for each element of the claim challenged by the moving party. M.R. Civ. P. 56(e); *Chartier v. Farm Family Life Ins. Co.*, 2015 ME 29, ¶ 6, 113 A.3d 234. If the non-moving party fails to present sufficient evidence of the challenged elements, then the moving is entitled to a summary judgment. *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897. Even if one party's version of the facts appears more credible and persuasive, any genuine issue of material fact must be resolved by the fact finder, regardless of the likelihood of success. *Estate of Lewis v. Concord Gen. Mut. Ins. Co.*, 2014 ME 34, ¶ 10, 87 A.3d 732.

## III.   ANALYSIS

To prevail on a breach of contract claim, a plaintiff must establish: (1) the parties had a legally binding contract; (2) the defendant breached a material term of the contract; and (3) defendant's breach caused the plaintiff to suffer damages. *Tobin v. Barter*, 2014 ME 51, ¶¶ 9-10, 89 A.3d 1088.   In their motion for summary judgment, Dominator Golf asserts Pine Ridge cannot establish a prima facie case that Dominator Golf breached § 23 of the Purchase and Sale Agreement or that Pine Ridge has suffered any damages caused by Dominator Golf. (Defs. Mot. Summ. J. 1.)  Whether a defendant has breached a material term and the assessment of damages are both questions of fact. *Tobin*, 2014 ME 51, ¶ 10, 89 A.3d 1088.

### A.   Breach of a Material Term

Pine Ridge asserts that, because the golf course was an important amenity for their housing development, the parties included § 23 in the Purchase and Sale Agreement. (Pl. Opp'n to Defs. Mot. Summ. J. 2.) As discussed above, § 23 provides, in relevant part:

> Buyers agree that they will keep and maintain the golf course property in substantially the same or better condition as heretofore kept and maintained by Seller, ...

(Defs. Supp'g S.M.F. ¶ 4; Pl. Opp. S.M.F. ¶ 4.)  Pine Ridge asserts that Dominator Golf has breached § 23 by failing to maintain the golf course in good condition and seeking to build houses on golf course property. (Pl. Opp'n to Defs. Mot. Summ. J. 4-5.)

Dominator Golf first argues that Pine Ridge cannot make a prima facie case that the golf course was in worse condition following the 2009 sale. (Defs. Mot. Summ. J. 4.) Dominator Golf asserts that Ms. Boutet, as the corporate deponent for Pine Ridge, testified that conditions of the golf course "may have" fluctuated day-to-day or year-to-year prior to 2009, and that she had no personal knowledge of the conditions of the golf course after March 11, 2009. (Defs. Supp'g

4

S.M.F. ¶¶ 10-11.) Dominator Golf also asserts that Steven Boutet[1] testified that he observed the conditions of the course "the first few years" after the 2009 sale only by looking at the course from his car as he drove by. (*Id.* ¶ 13.) Steven Boutet also testified that he "noticed a turnaround of the conditions" after Daniel Hourihan[2] took over operation of the golf course and that, since 2012, the golf course "looks good" to him. (*Id.* ¶¶ 14-16.) Dominator Golf also cites an affidavit by Hourihan. (*Id.* ¶¶ 20-22.) In his affidavit, Hourihan's asserts the golf course is in "top quality" condition, "better condition now than it was in 2008," and that Pine Ridge's claim that the golf course's condition has steadily declined since the 2009 purchase and sale "has no basis in reality." (*Id.*)

In opposition to summary judgment, Pine Ridge cites additional deposition testimony by Steven Boutet. (Pl. Add'l S.M.F. ¶¶ 1-2.) Steven Boutet testified that in the summer of 2009 or 2010, while driving through the development, he observed that several holes on the course were in poor condition. (S. Boutet Dep. 39:3-41:8.) Steven Boutet testified that the grass on the 11th hole was brown, its pond was almost empty, and the edges of its bunkers were rough, that 17th hole "didn't look as lush as it had in the past" and its bunkers were not cut cleanly around the edges, and that the 1st and 2nd holes were not as green as he thought they should be. (*Id.*) Steven Boutet's additional testimony sufficiently demonstrates that there is a genuine issue of

---

[1] Steven Boutet is Ronald and Barbara Boutet's son. At his deposition, Steven Boutet stated that he was the general manager of the golf course for approximately five years before the golf course was sold Dominator Golf in 2009. (S. Boutet Dep. 4:21-5:22.) At Ms. Boutet's deposition, Pine Ridge's counsel stated, "…the person other than Barbara that has information who is affiliated with Pine Ridge is Stephen [sic].… If it allays any concerns you have, I think Barbara and I would agree that whatever Stephen [sic] testified to could be treated as a statement by Pine Ridge so we wouldn't need to bring him back as a designee for this." (B. Boutet Dep. 13:8-17.)

[2] Daniel Hourihan is an officer and member of Dunegrass Golf, LLC, which leased the golf course from November 2011 until October 2016. (Defs. Supp'g S.M.F. ¶¶ 5-6, Pl. Opp. S.M.F. ¶¶ 5-6.) Hourihan avers that oversaw the day-to-day operations of the golf course, including its maintenance. (Hourihan Aff. ¶ 2.) Hourihan also avers that he was involved in the negotiations of the sale of the golf course in 2008 and 2009 as a broker for Pine Ridge. (*Id.* ¶ 3.)

material fact whether the conditions of the golf course deteriorated after the 2009 sale in breach of § 23 of the Purchase and Sale Agreement.[3]

Pine Ridge also asserts that Dominator Golf has breached § 23 of the Purchase and Sale Agreement by building houses on golf course property and seeking approvals to convert more golf course property into housing lots. (Pl. Opp'n to Defs. Mot. Summ. J. 5; Pl. Add'l S.M.F. ¶ 5.) Pine Ridge asserts that turning golf course property into housing lots is not maintaining the golf course property "in substantially the same or better condition" as required by § 23. (Pl. Opp'n to Defs. Mot. Summ. J. 5.)

Dominator Golf admits that it has obtained approvals to build two residential subdivisions. (Defs. Reply S.M.F. ¶ 5.) Dominator Golf denies that it had started construction on those subdivisions. (*Id.*) Dominator Golf also admits that it has contracted to build four houses along Wild Dunes Way and another eleven units on what is known as the "maintenance area." (*Id.*) Dominator Golf asserts that its efforts to develop golf course property are not a breach of § 23. (Defs. Reply to Pl. Opp'n to Defs. Mot. Summ. J. 1-3.) In support of its assertion, Dominator Golf cites deposition testimony from Pugliares regarding an email from Ronald Boutet, in which Mr. Boutet allegedly represents to Pugliares that the purchase price for the golf course included the ability to develop forty residential units on the property. (Defs. Reply S.M.F. ¶ 5.) However, neither party has provided the court with Pugliares' deposition testimony. Thus, Dominator Golf's assertion is not properly supported and may be disregarded. *See* M.R. Civ. P. 56(h)(4).

The interpretation of an unambiguous contract is a question of law for the court. *Town of Lisbon v. Thayer Corp.*, 675 A.2d 514, 516 (Me. 1996). If a contract is unambiguous, the court

---

[3] Pine Ridge also cites deposition testimony from Pugliares that allegedly supports its assertion that Dominator Golf has failed to keep maintain the golf course property. (Pl. Add'l S.M.F. ¶¶ 1-2.) However, as discussed *infra*, neither party has provided the court with Pugliares' deposition testimony.

6

must give the contract terms their plain, ordinary, and generally accepted meaning. *Villas by the Sea Owners Ass'n v. Garrity*, 2000 ME 48, ¶ 9, 748 A.2d 457. However, if a contract is ambiguous, then its interpretation is a question of fact that must be determined by the fact finder. *Thayer Corp.*, 675 A.2d at 516. The determination of whether a contract is ambiguous is a question of law for the court. *Id.* "Contract language is ambiguous when it is reasonably susceptible to different interpretations." *Id.* (internal quotation omitted). If a contract is found to be ambiguous, the court may consider extrinsic evidence to determine the parties' intent. *Garrity*, 2000 ME 48, ¶ 10, 748 A.2d 457. When a contract is ambiguous and there are genuine issues of material fact regarding the intent of the parties, summary judgment is inappropriate. *Thayer Corp.*, 675 A.2d at 516.

The court finds § 23 of the Purchase and Sale Agreement to be ambiguous. The plain language of § 23 does not provide any clarity regarding what constitutes keeping and maintaining the golf course property "in substantially the same or better condition" or whether developing and building houses on golf course property violates § 23. Both parties assert that a copy of the Purchase and Sales Agreement is attached as an exhibit to Pine Ridge's complaint. (Defs. Supp'g S.M.F. ¶¶ 2, 4; Compl. ¶ 5.) The complaint filed with the court, however, contains no exhibits. Neither party has provided a copy of the Purchase and Sales Agreement with their motion or opposition. Thus, the court is unable to determine whether other terms of the agreement might clarify what constitutes keeping and maintaining the golf course property "in substantially the same or better condition" or whether the agreement contains other terms concerning the development of the golf property. Furthermore, neither party has provided sufficient evidence regarding the parties' intent at the time the Purchase and Sale Agreement was

7

executed. Therefore, genuine issues of material fact regarding the interpretation of § 23 and the parties' intent exist.

B.    Causation of Damages

Dominator Golf also argues Pine Ridge cannot demonstrate that it has suffered damages as a result of any actions by Dominator Golf. (Defs. Mot. Summ. J. 6.) Dominator Golf asserts that Pine Ridge has sold more lots at Dunegrass than it did before the 2009 sale and that Pine Ridge has been able to obtain financing from multiple sources since 2009. (Defs. Supp'g S.M.F. ¶¶ 32-45, 50, 54-55, 62-65, 68.) Dominator Golf also argues that, even if Pine Ridge's Dunegrass property values have declined since 2009, Pine Ridge cannot demonstrate that Dominator Golf has caused the diminution in value because Pine Ridge has not identified a qualified expert that can testify regarding causation. (Defs. Mot. Summ. J. 6.)

Pine Ridge argues that Ms. Boutet, as the sole remaining owner and officer of Pine Ridge, is qualified to testify to the diminution in value of Pine Ridge's property and income as a result of Dominator Golf's conduct. (Pl. Opp'n to Defs. Mot. Summ. J. 3.) In response, Dominator Golf asserts that, although there is a presumption under Maine law that property owners may testify to the as to the value of their property, the presumption does not extend to Ms. Boutet as she is not the personal owner of Pine Ridge's property. (Defs. Reply to Pl. Opp'n to Defs. Mot. Summ. J. 3.)

Under Maine law, property owners, "by reason of their ownership alone, may state their opinion as to the fair market value of their property" including the cause of any change in the value of their property. *Garland v. Roy*, 2009 ME 86, ¶ 21, 976 A.2d 940 (internal quotation omitted); *Ferrell v. Cox*, 617 A.2d 1003, 1007 (Me. 1992) (permitting a property owner to testify that "he felt that his property lost between $250,000 to $200,000 in value ***as a result of*** the sale

8

of the easements." (emphasis supplied)). The basis for permitting owners to offer their opinion as to the value of their property is the assumption that owners possess "intimate knowledge of the characteristics and peculiarities" of the property. *State v. Doray*, 359 A.2d 613, 614 (Me. 1976). Although an owner may not possess all of the qualifications required of others to testify as to value of property, "through personal knowledge of [their] property, with a reasonable opportunity to observe its area, the uses to which it may be put, the extent and condition of any improvements thereon," the owner possesses sufficient knowledge from which to form an opinion as to the value. *Simmons v. State*, 234 A.2d 330, 332 (Me. 1967).

"There is a distinction, however, between the applicability of the presumption to personal as opposed to corporate owners of land." *DiPietro v. Boynton*, 628 A.2d 1019, 1024 (Me. 1993). Citing a Maryland case, the Law Court stated that the presumption that property owners may testify as to the value of their property "is limited to personal owners of property, and does not extend to the officers or stockholders of a corporation." *Id.* (quoting *M.A. Realty Co. v. State Roads Comm'n*, 233 A.2d 793, 795 (Md. 1967)) (internal quotation marks omitted). Because Ms. Boutet does not personally own the property a Dunegrass, she is not entitled testify to its value based on the presumption.

Although Ms. Boutet is not entitled to the presumption afforded to individual property owners, that does not necessarily preclude her from testifying regarding the value of Pine Ridge's property. "[A] corporate officer may be a competent witness as to the value of corporate property, not because of his relationship with the corporation, but that the relationship is but a factor which, together with other qualifications, may render his evidence trustworthy on the issue to which it is related." *F. X. Bilodeau Realty, Inc. v. Lewiston Urban Renewal Auth.*, 237 A.2d 398, 399 (Me. 1968). Thus, Ms. Boutet may testify regarding value of Pine Ridge's properties

9

and the cause of any diminution in value if she qualifies as an expert witness pursuant to Maine Rule of Evidence 702.

Rule 702 provides that "a person who is an expert 'by knowledge, skill, experience, training, or education' may give an opinion concerning scientific, technical, or specialized knowledge." *State v. Cookson*, 2003 ME 136, ¶ 22, 837 A.2d 101 (quoting M.R. Evid. 702). "As long as the expert is qualified, the extent of the qualifications goes to the weight of the expert's testimony." *Id.* Rule 703 further provides that an expert may base their opinion on facts or data that the expert has been made aware of or personally observed. M.R. Evid. 703. If the facts or data replied on by the expert witness are the kind that experts in the same subject matter would reasonably rely in forming their opinions, then the facts or data relied on by the witness need not be admissible in order for the expert's opinion to be admitted. *Id.*

Dominator Golf argues that Ms. Boutet does not possess the requisite knowledge, experience, or familiarity with Pine Ridge's property to offer an opinion regarding its value. (Defs. Reply to Pl. Opp'n to Defs. Mot. Summ. J. 4.) Dominator Golf asserts that, at her October 13, 2016 deposition as the corporate deponent for Pine Ridge, Ms. Boutet testified that Pine Ridge no longer owns any property at Dungrass; that most the property at Dunegrass has been transferred to Barbara Boutet, Inc.; that she does not know of any specific property sold before March 11, 2009; that she did not know what troubles Section B, LLC had selling lots; that she did not know whether the golf course conditions hindered LaCosta, LLC's development and ability to sell lots; that she did not know of any specific way that the golf course conditions made it more difficult for Pine Ridge to sell or develop Dunegrass properties because she "wasn't involved that way;" that she did not know of any valuation of Pine Ridge's property completed since the 2009 sale, but that she is "assuming it's worth a lot less;" and, that she did not know

10

what specific ways Pine Ridge had been damaged by the conditions on the golf course. (Defs. Supp'g S.M.F. ¶¶ 27, 46, 56-57, 60, 70-72, 75; Defs. Reply S.M.F. ¶ 4.) Dominator Golf also asserts that, when asked what Pine Ridge's property was worth prior to the 2009 sale, Ms. Boutet testified, "I don't know for sure. I used to hear my husband say maybe seven or eight million, but that's all I know." (Defs. Reply S.M.F. ¶ 4.)

In her December 2, 2016 affidavit, Ms. Boutet avers that she is the president and sole shareholder of Pine Ridge and its affiliated entities that own and develop the property at Dunegrass; that her and Ronald Boutet had purchased the golf course property and spent thirty years developing the area; that her family owed and operated the golf course prior to the 2009 sale; that the golf course was and is a central component of their development; that she is a life-long golfer that associates with other golfers; that her opinion is informed by her knowledge, skill, and experience at Dunegrass over several decades and by her and Mr. Boutet's efforts to market and develop their property at Dunegrass; that following the deterioration of the golf course, Pine Ridge's properties "were worth less and we sold them for less;" that during the years that the golf course deteriorated, home prices in section B of Dunegrass were depressed and Pine Ridge received no shares of profits from the sale of any lots in section B; and, that their residential developments have been adversely affected by the mere proposal of residential development on adjacent golf course property. (B. Boutet Aff. ¶¶ 1, 4, 6-7, 12, 16, 19-20.)

Based on her affidavit, it appears likely that Ms. Boutet has sufficient knowledge to offer testify regarding the value of Pine Ridge's property and the cause of any diminution of value. Dominator Golf's assertions that Ms. Boutet is not qualified or that her opinions lack foundation goes to the weight of her opinion testimony.

Lastly, Dominator Golf argues that Ms. Boutet's affidavit should not be considered in determining whether there are genuine issues of material fact for trial because the affidavit contradicts Ms. Boutet's earlier deposition testimony. (Defs. Repy to Pl. Opp'n to Defs. Mot. Summ. J. 6-7.) Our Law Court has stated that a witness who has given clear answers to unambiguous questions cannot later create a conflict and resist summary judgment by contradicting their prior testimony without providing a legitimate explanation as to why he or she has changed their testimony. *Garland*, 2009 ME 86, ¶ 18 n.4, 976 A.2d 940. However, the court does not find Ms. Boutet's affidavit to be directly contradictory to her earlier deposition testimony. Therefore, Ms. Boutet need not provide any explanation in order for Pine Ridge to avoid summary judgment.

Based on Ms. Boutet's affidavit, there are genuine issues of material fact regarding whether Dominator Golf's actions caused a diminution in value of Pine Ridge's property at Dunegrass or other damages. Therefore, because there are genuine issues of material fact regarding whether the golf course conditions deteriorated after the 2009 sale, the interpretation of § 23, the parties' intent, and causation of damages, summary judgment must be denied.

## IV. CONCLUSION

Defendants Dominator Golf, LLC and Domenic Pugliares' motion for summary judgment on Plaintiff Pine Ridge Realty Corporation's claim for breach of contract is **DENIED**.

Pursuant to Maine Rule of Civil Procedure 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated    1/26/17                          /S_____

                                          **M. Michaela Murphy**
                                          **Justice, Business and Consumer Court**

12